Filed 5/28/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| NATIONAL FOOTBALL LEAGUE et al., | B245619 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC490342) |
| v. | |
| FIREMAN'S FUND INSURANCE COMPANY et al., | |
| Defendants and Respondents. | |

APPEAL from orders of the Superior Court of Los Angeles County, John Shepard Wiley, Jr., Judge.  Affirmed.

Covington & Burling, Donald W. Brown, Michael S. Greenberg, Jeffrey M. Davidson; Munger, Tolles & Olson and Cary B. Lerman, for Plaintiffs and Appellants.

Cozen O'Connor, Charles E. Wheeler, Matthew Walsh, Amanda M. Lorenz; Carroll, McNulty & Kull, Christopher R. Carroll and Heather E. Simpson, for Defendants and Respondents TIG Insurance Company, The North River Insurance Company and U.S. Fire Insurance Company.

Selman Breitman, Sheryl W. Leichenger and Elisabeth M. D'Agostino, for Defendant and Respondent American Guarantee & Liability Insurance Company.

Tressler, Michaela L. Sozio, Elizabeth L. Musser; White & Williams, Michael O. Kassak and Edward M. Koch, for Defendants and Respondents Federal Insurance Company, Vigilant Insurance Company and Great Northern Insurance Company.

The Aguilera Law Group, A. Eric Aguilera; Hermes, Netburn, O'Connor & Spearing, Kevin J. O'Connor, Peter C. Netburn and Matthew C. Kalin, for Defendants and Respondents Discovery Property & Casualty Insurance Company, St. Paul Protective Insurance Company, Travelers Casualty & Surety Company, Travelers Indemnity Company and Travelers Property Casualty Company of America.

Troutman Sanders, Terrence R. McInnis and William D. Burger, Jr., for Defendant and Respondent XL Insurance America, Inc.

Clyde & Co Us, David A. Gabianelli, Andrew G. Wanger, Daren S. McNally and Barbara M. Almeida, for Defendants and Respondents, Ace American Ins. Co., Century Indemnity Ins. Co., Illinois Union Ins. Co. and Westchester Fire Ins. Co.

Gordon & Rees, Peter Schwartz and Gary Collis, for Defendant and Respondent Alterra America Insurance Company.

Arnold & Porter, Brian K. Condon, Jake R. Miller; Jackson & Campbell, Warren Lutz, Timothy R. Dingilian and Paul D. Smolinsky, for Defendants and Respondents Chartis Property Casualty Company, Chartis Specialty Insurance Company, Illinois National Insurance Company and National Union Fire Insurance Company of Pittsburgh, Pa.

Wilson, Elser, Moskowitz, Edelman & Dicker, William K. Enger and James J. Pulliam, for Defendant and Respondent Guarantee Insurance Company.

# I. INTRODUCTION

The National Football League has returned to Los Angeles, but not, as many Angelenos hope, bearing the gift of a new home team. The league administration and its intellectual property marketing arm have been sued in multiple states by dozens of former players alleging lifelong brain damage from on-field injuries dating back to the 1950's. In this case the plaintiffs, National Football League and NFL Properties LLC, seek a Los Angeles Superior Court declaratory relief judgment regarding the coverage duties of 32 insurance carriers pursuant to some 187 commercial liability policies that were issued over a 50-60 year period. All the same entities are parties to parallel coverage actions filed by some of the insurers in New York state courts at approximately the same time as the California case.

The insurer defendants sought a dismissal or stay of the California case on a theory of forum non conveniens. Following extensive briefing and a hearing, the California trial court ordered the California proceeding stayed pending the outcome of the New York actions. The plaintiffs appeal, contending the trial court misapprehended the applicable legal test, and abused its discretion in any event. We affirm and clarify the standards to be applied by a trial court which intends to stay rather than dismiss a California case on grounds of forum non conveniens. We also hold the plaintiffs, whose principal places of business are in New York City, are not California residents in the inconvenient forum context, even though three teams reside in California. Finally, we find no abuse of discretion in the trial court's analysis and conclusion that the California action should be stayed.

## II. BACKGROUND

### A. The NFL policyholder plaintiffs

Plaintiff National Football League ("NFL"), is an unincorporated association headquartered in New York City since 1960 and comprised of 32 member "clubs" based in various states throughout the country. Only two states, California and Florida, are home to three teams. New York is home to only the Buffalo Bills; the "New York" Giants and "New York" Jets are located in northern New Jersey, a short distance from New York City.[1] Over the past 50 years, more NFL regular season games have been played in California than in any other state. The annual Super Bowl and Pro Bowl games have been played in California 34 times, most often in Los Angeles County.

Plaintiff NFL Properties LLC is a Delaware corporation headquartered, since 1970, in New York City. At the time the actions at issue here were filed, NFL Properties was not licensed to do intrastate business in California. NFL Properties develops, licenses and markets the intellectual property of the NFL and its member clubs. NFL Properties is the successor to National Football League Properties, Inc. ("NFLP"), which was incorporated in California in 1963. NFLP was a California corporation throughout its existence, which ended in 2001. Its principal place of business until approximately1970 was in Los Angeles County, where it and then NFL Properties maintained an office unti1 2005. [2]

---

[1] The California teams are the San Francisco 49ers, Oakland Raiders and San Diego Chargers. From 1946 to 1979 a fourth club, the Rams, made its home in Los Angeles; the Rams moved to Anaheim in 1980 and to St. Louis in 1995. The Chargers were located in Los Angeles for their inaugural season (1960), then moved to San Diego. The Raiders played their home games in Los Angeles from 1982 to 1994 before returning to Oakland.

[2] NFL Properties' parent company, not a party to this lawsuit, has a substantial presence in California in that two of its units, NFL Network and NFL.com, have

NFL's largest offices are in New York, where the various NFL entities conduct the majority of their business.[3] Anastasia Danias, Vice-President of Legal Affairs for NFL, works in New York, as do other NFL executives. NFL entities regularly file suit in New York state and federal courts, including insurance coverage actions against insurers located in eastern states other than New York.

### B. The insurance and insurer defendants

Thirty-two insurers are named as defendants in the instant coverage case. NFL alleges those companies issued commercial general liability ("CGL") policies providing primary and excess coverage over a roughly 45-year period from the late 1960's to 2012. Decades of policies are implicated in the underlying tort litigation because CGL policies generally cover only occurrences within the policy period and the tort plaintiffs allege injuries dating back to the 1950's. Plaintiffs NFL and NFL Properties separately purchased and maintained their own insurance programs over the years involved here up until 2000, when they fully integrated their programs.

Thus far, the NFL plaintiffs have identified at least 187 policies issued to one or both of them by the 32 defendants covering time periods between March 1968 and August 2012. The vast majority were brokered and delivered to NFL in New York City. The policies provide coverage in layers: a first-recourse "primary" layer and "umbrella" or "excess" layers of coverage. Fifty-two of the policies, issued by 12 of the insurer defendants, are primary policies, which include a duty to defend against lawsuits potentially covered by the policy. Prior to 1977, NFL relied primarily on California-based insurance brokers and offices. It is expected that some or all policies

---

headquarters in Los Angeles County. The NFL Network headquarters houses a staff of more than 300 people, including a number of NFL employees and an NFL executive vice-president, making it the largest NFL-related entity office outside New York.

[3]     Unless otherwise noted, all subsequent references to "NFL" as a party should be read to include both plaintiffs.

from that era, which are yet to be located, were issued through California brokers and/or to California-based NFL entities.

All the defendants are licensed and/or doing business in both California and New York. With one exception, the insurers currently have their principal places of business east of the Mississippi River, primarily in the northeast and mid-Atlantic states. The majority are located within 250 miles of New York City. Only Fireman's Fund has a principal business location in California, in the city of Novato. Three insurers have their principal place of business in New York. Fourteen defendants have their principal place of business in either Connecticut or New Jersey, which along with New York are collectively referred to as the "Tri-State Area." Four insurers have their principal place of business in Pennsylvania. Four more are located in Illinois, and one each are in Florida, New Hampshire, North Carolina, Virginia, and Minnesota. Thirty of the 32 insurer defendants are incorporated in east coast states, Illinois or Indiana.

Chartis is the only primary carrier with a principal place of business in New York. NFL alleges that Chartis issued 12 policies under which NFL is entitled to coverage. Eleven policies were negotiated primarily between underwriters located in New York and NFL's New York broker, and the policies were delivered to NFL in New York. One Chartis policy was negotiated primarily between underwriters located in both Illinois and New York and an NFL broker in Indiana. NFL tendered its claims for coverage under the Chartis policies from its New York offices, and Chartis is handling those claims in New York, where documents concerning the claims are located.

TIG issued more duty-to-defend policies than any other insurer. Although TIG is incorporated in California and maintained its principal business location here at the time most of its NFL policies were written, the TIG policies were issued to NFL in New York through a New York-based broker. All relevant TIG documents and personnel are located in Manchester, New Hampshire. TIG's two affiliates have their principal places of business in New Jersey, where all their relevant documents and witnesses are located.

5

The Travelers policies were negotiated, issued, or issued for delivery to NFL in New York, often through New York brokers. Travelers is handling NFL's claims in New York City.

ACE is headquartered in Philadelphia. All 28 of its primary and secondary policies allegedly issued to NFL since 1968 were brokered, issued, and delivered to NFL in New York. Although ACE is handling NFL's claims partly in California, representatives from New Jersey, Delaware and Pennsylvania are also involved.

The Chubb policies were delivered to NFL in New York, and most of the brokers for those policies are located in New York. One Chubb person responsible for NFL claims handling is located in California; several others are located in Texas and New Jersey.

Hartford Accident & Indemnity Company and New England Reinsurance Corporation issued seven policies to NFL. Six policies for which information is available, were issued in New York, five through a New York-based broker. NFL's claims under these policies have been handled by representatives in Connecticut working with NFL personnel in New York.

XL Insurance America issued six policies, and XL Select Insurance Company issued one. All seven were brokered, underwritten, and delivered in New York. All claims by NFL under these policies are being handled in Pennsylvania.

Fireman's Fund or an affiliate issued four policies to NFL in New York. Three policies were issued through a New York-based broker and one primary policy was issued through a California-based broker that is now located in Illinois. This insurer is handling NFL's claims through employees in California and South Carolina, who have communicated with NFL's New York personnel.

Through Harbor Insurance Company and Niagara Fire Insurance Company, Continental Insurance Company issued four policies to NFL. Three were negotiated between New York underwriters and brokers; one involved a New York underwriter and

6

a broker in California. That California broker has since been acquired by a Chicago-based brokerage. NFL's claims under these policies are being handled in New Jersey.

Allstate Insurance Company is the successor in interest to Northbrook Excess & Surplus Insurance Company, formerly Northbrook Insurance Company. All the policies under which Allstate may be liable were issued to NFL in New York through a New York broker. All claims handling with respect to these policies is taking place in Illinois.

Alterra issued one policy to NFL through a New York broker; it is handling NFL's claims in New York and Virginia.

American Re issued one policy to NFL through a California broker that has since been acquired by a Chicago-based brokerage. All claims handling is taking place in New Jersey.

American Guarantee & Liability Insurance Company, Arrowood, Guarantee Insurance Company and OneBeacon Insurance Company each issued one policy to NFL in New York and through a New York broker in most cases. These carriers are handling NFL's claims in states other than California, including Minnesota, Georgia and Florida.

## C. The underlying tort litigation

As set forth in appellants' appendix, in July 2011, 73 former players sued the NFL and NFL Properties, along with helmet-maker Riddell in Los Angeles Superior Court (the "*Maxwell*" case). The players alleged concussions and other injuries sustained during their NFL careers had resulted in brain and other neurological damage, and that, at its highest management levels, NFL negligently failed to protect players against such long-term injuries. *Maxwell* was the first such lawsuit filed against NFL. In August 2011, two similar actions were filed in Los Angeles Superior Court on behalf of 63 players ("*Pear*" and "*Barnes*"). Also in August 2011, seven former players filed a putative class action against NFL in the United States District Court for the Eastern District of Pennsylvania ("*Easterling*"). *Maxwell, Pear, Barnes and Easterling* were the vanguard of what has

become a large number of lawsuits filed on behalf of former players in California and at least eight other states throughout the country ("underlying tort litigation"). Some cases allege fraud and conspiracy in addition to negligence.

NFL removed *Maxwell, Pear*, and *Barnes* to the United States District Court for the Central District of California on the basis of a federal question of jurisdiction, contending that plaintiffs' claims were preempted under the Labor Management Relations Act and provisions of the players' Collective Bargaining Agreement.[4] NFL subsequently moved to transfer those and other federal actions for coordinated or consolidated Multidistrict Litigation ("MDL") of pretrial proceedings in a single court. NFL and most of the tort plaintiffs urged that the consolidated proceedings be assigned to the Eastern District of Pennsylvania, where Judge Anita B. Brody was presiding over *Easterling,* the first case filed in federal court. In its transfer motion, NFL argued the Eastern District of Pennsylvania was the "most suitable" forum because, among other things, it "is a convenient forum for many defendants and potential witnesses in the Actions, with the NFL headquartered in nearby New York City, and the plaintiffs in the . . . [removed California actions], more than half of whom reside in the Eastern part of the United States . . . ."[5]

In January 2012, the Judicial Panel on Multidistrict Litigation ordered the *Maxwell, Pear,* and *Barnes* actions transferred to the Eastern District of Pennsylvania for MDL pretrial proceedings. All the players allege in the concussion MDL that "all NFL policies and decisions relevant to the conduct alleged herein occurred primarily in the

---

[4] The Collective Bargaining Agreement provides that it shall be construed, interpreted and governed by New York law.

[5] Specifically, NFL argued that: (1) the NFL is headquartered in nearby New York; (2) more than half of the plaintiffs in the California tort actions reside in eastern states, mostly on the east coast; and (3) five of the seven plaintiffs in the Pennsylvania action reside on the east coast. NFL further argued that transfer to Pennsylvania would "not pose an inconvenience to the [underlying] plaintiffs in any meaningful way, as they reside in 30 different states, with 126 out of the 143 former players currently residing outside of the state in which they brought their complaint (including 120 out of 136 out-of-state former players in the California Actions)."

8

NFL corporate offices in New York." An amended MDL complaint focuses on the claim that NFL's senior management knew the risk of brain injury to players, but failed to disclose it. Those cases will be returned to their original venues if not settled before trial.

As of November 2012, players had filed more than 174 lawsuits against the NFL itself, many of which also named NFL Properties as a defendant. Most (154) were filed in states other than California. More than 3,700 former players and more than 2,000 spouses are plaintiffs in those cases. Approximately 12 percent of the former players allege California residence; approximately 1.5 percent alleges New York residence. Most of these cases have been, or will be, consolidated in the MDL in Pennsylvania.

At the time the trial court stayed NFL's California action, the MDL proceedings were in the initial pleading stage, with discovery stayed and motions to dismiss pending and awaiting oral argument. If the underlying tort litigation is not dismissed on pretrial motions, the individual lawsuits will be returned for trial to the jurisdictions (including California) in which they were initially filed.

D. The coverage litigation

The underlying tort claims are being handled at NFL's New York headquarters and a New York broker, Marsh USA, Inc. Correspondence regarding the coverage issues has been directed, at NFL's request, to its vice-president of legal affairs at NFL's Park Avenue headquarters.

On August 13, 2012, Alterra America Insurance Company filed suit against NFL in the New York State Supreme Court in Manhattan. There Alterra alleges that former players sued NFL alleging neurological injuries sustained while playing football. According to Alterra, NFL tendered some of these lawsuits for defense and indemnity and Alterra declined coverage. Alterra seeks a declaration that it is not obligated to defend or indemnify NFL.

9

Two days after Alterra filed in New York, NFL instituted this action in Los Angeles Superior Court against Alterra and 31 other insurance companies. The operative complaint alleges breach of contract against certain primary insurance carriers and three declaratory relief claims against all insurers. NFL claims that between 1968 and 2012 the insurers issued 187 primary and umbrella or excess insurance policies to NFL. According to NFL, former football players and their spouses filed more than 140 lawsuits alleging concussions and other football injuries resulting in long-term brain damage. NFL claims that 12 insurers have breached their duty to defend under 52 primary policies. As to all 32 insurers, NFL seeks a declaration that the insurers must indemnify NFL under all policies for any damages they must pay to claimants in the underlying brain injury suits.

NFL also seeks a declaration regarding the respective rights and duties of NFL and various unnamed "Doe" insurers under policies issued to Riddell, Inc., which manufactures football helmets. NFL alleges that the Riddell policies, which are unrelated to the policies involved in the instant lawsuit, may provide coverage to NFL as additional insureds. Earlier, Riddell had filed against its own insurers in Los Angeles Superior Court, regarding those insurers' duty to defend and indemnify Riddell in the underlying brain injury suits.

On August 21, 2012, Discover Property & Casualty Company and five affiliated companies (collectively, Travelers), all of which are defendants in the present NFL lawsuit, filed a new action in the New York State Supreme Court in Manhattan. Travelers seeks declaratory relief as to its duty to defend and indemnify NFL in the brain injury cases pursuant to policies issued from the 1960's to 2012. Travelers also seeks a declaration that the other NFL insurers are not entitled to contribution from Travelers with respect to any amounts those insurers pay to defend or indemnify NFL. All parties in the present NFL action are parties to Travelers' New York action. The Travelers case was consolidated with the Alterra action on September 19, 2012. No insurers involved in

10

the New York actions have challenged personal jurisdiction or claimed the issues are not justiciable.

On August 22, 2012, Alterra filed an amended complaint in its New York action, naming as defendants all but two of the insurers who are defendants in NFL's California action. Alterra repeats the allegations from its original complaint and claims that the insurer defendants issued policies to NFL.

On August 23, 2012, TIG Insurance Company and two affiliates, all of which are defendants in the NFL's California action, filed an answer, counterclaim, cross-claims and a third party complaint in the Alterra action. TIG asserts cross-claims against NFL and all the other insurers seeking declaratory relief as to the duties to defend and indemnify. It also asserts a third party claim for declaratory relief against the two carriers that Alterra did not include in its amended complaint. As a result, all parties in the NFL's California action are parties in Alterra's New York action.

The Chartis Insurers answered in the Alterra and Travelers New York actions on September 6, 2012, and asserted cross-claims against NFL for declaratory relief. On September 12, 2012, ACE American Insurance Company and four affiliates (collectively "ACE"), and Federal Insurance Company and two affiliates (collectively, Chubb), answered in the Alterra and Travelers actions and asserted cross-claims against NFL.

In the Alterra and Travelers actions NFL filed motions to dismiss on September 12 and 17, 2012. Those motions had not been heard by the time of the California trial court ruling at issue in this appeal.[6]

---

[6]      We deny NFL's motion for judicial notice of the records of later rulings in the New York actions. Those rulings were not before the trial court when it stayed the present case and are irrelevant in that the suitability of the New York forum is not at issue in this appeal. (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3; *Hahn v. Diaz-Barba* (2011) 194 Cal.App.4th 1177, 1193; *Moran v. Endres* (2006) 135 Cal.App.4th 952, 954, fn. 2.)

11

### E.  The related case and forum non conveniens motions

Shortly after filing the instant action, NFL lodged a notice of related case under California Rules of Court, rule 3.300.  NFL asserted this case is related to the Ridell insurance coverage action, given that both arose out of the underlying players' claims.  Insurer defendants immediately filed oppositions.  On September 17, 2012, NFL filed a motion to relate its case to the *Riddell* action.  The following week, the judge to whom the *Riddell* action had been assigned heard argument and granted NFL's motion.  On October 3, 2012, after Travelers filed a peremptory challenge pursuant to Code of Civil Procedure section 170.6, both this case and *Riddell* were reassigned to Judge John Shepard Wiley.

In September 2012, defendants Chartis, TIG, Travelers, ACE, Chubb and Fireman's Fund filed separate motions to dismiss or stay NFL's action on forum non conveniens grounds.  All but one of the other insurer defendants joined in the motions.  NFL filed a consolidated opposition and the insurers filed replies and joinders.  On November 28, 2012, the trial court held its hearing on the motions to dismiss or stay this action.  At the beginning of the hearing the court furnished the parties with a five-page tentative ruling granting the motions and staying the action.  During the hearing, the trial court heard extensive argument by NFL regarding the insurers' motions.  Later that day, the trial court issued a written decision (detailed below) granting the motions and imposing a stay of this action, pending the outcome of the parallel New York matters.  The trial court set a review hearing in December 2013, and invited the parties to calendar the matter at any time if necessary.

On December 6, 2012, NFL appealed the trial court's orders.

F. The trial court's ruling in the present case

In pertinent part, the trial court's written explanation of its balancing of the interests for and against retaining the action in California reads as follows.

"[The balance tips against California.] Convenience is a central concern. (*Stangvik v. Shiley, Inc.* (1991) 54 Cal.3d 744, 756-757.) . . . Here, nothing recommends California. Most witnesses and documents are elsewhere. The NFL agrees, for it has not attempted any evidentiary showing about anticipated witnesses and where they might reside. This omission underlines its description of the case in oral argument as 'transitory' . . . a case of national range and scope . . . . There really is no dispute about the facts. The NFL just wants to do this its way, regardless of the irrationality of coming from New York to Los Angeles, regardless of the cost to California taxpayers and jurors, and regardless of the budget situation in California. [Citing a November 29, 2012 Los Angeles Daily Journal Article regarding impending Los Angeles Superior Court budget cuts expected to total between $56 and $85 million and expected to involve numerous courthouse closures and staff reductions.] Under *Century Indemnity* [(1997) 58 Cal. App. 4th 408] . . . , however, the NFL . . . does not have a legal entitlement to a California forum . . . . [¶] The NFL selected California -- true -- but 'that factor is of lesser significance' because the NFL is not a California resident. [Citing *Century Indemnity* at p. 412.] [¶] 'There are manifest reasons for preferring residents . . . who pay for maintaining the courts concerned. The injustices and the burdens . . . which can follow from an unchecked and unregulated importation of transitory causes of action for trial in this state require that our courts, acting upon the equitable principles, exercise their discretionary power to decline to proceed in those causes of action which they conclude . . . may be more appropriately and justly tried elsewhere.' [Citing *Stangvik*, *supra,* 54 Cal. 3d at p. 751.] [¶] The NFL's choice of California is selective and tactical. The NFL moved the underlying tort litigation in this very dispute from California to Pennsylvania. (NFL Opposition 12:16-20; Danias declaration paragraph 13.) This fact

13

makes this case unlike any precedent the NFL cites, for it shows the NFL's forum decision here is not the product of some general and consistent preference for California. [¶] Balancing private and public convenience is the heart of the *forum non conveniens* test . . . . Yet the NFL seeks a privilege in this calculus. It would like its tactical convenience to count for more than everyone else's. . . . The NFL offers no logical reason for its understandable but self-interested request to have its way. No precedent supports this selective effort to file a redundant lawsuit in an illogical forum. [¶] The NFL raises seven other unpersuasive points. [¶] First, the NFL urges that it is not a corporation but rather an unincorporated association of football clubs. Its form is inconsequential. Whatever it is, the NFL long has had its headquarters in New York. New York is the NFL's physical center of operations: where it's important people go to work, directing NFL affairs. New York is where these executives make and keep their important documents. [¶] Second, the NFL lists its past contacts with California. . . . The question today is not the jurisdictional one, where the extent of past contacts affects the fairness of summoning a defendant to some remote court. Instead, today's question is about convenience. What is convenient today depends on today's conditions. The past is gone. [¶] Third, the NFL cites *Ford Motor Co. v. Insurance Co. of North America* (1995) 35 Cal.App.4th 604, 607-608, but that case was about three polluted California sites: one in Milpitas, one in Palo Alto, and one in Newport Beach. By contrast, the NFL case has no anchors in California land. [¶] Fourth, the NFL cites *Morris v. AGFA Corp.* (2006) 144 Cal.App.4th 1452, 1455, but that court held California was an inconvenient forum and sent the case elsewhere. This ruling follows that holding. [¶] Fifth, the NFL cites a pending case in this court about insurance coverage for football head injuries. The plaintiff in that case is a helmet manufacturer called Riddell. Riddell sued its insurers about coverage. Although that case is related to this one, it has a different plaintiff: Riddell. Riddell's principal place of business is Van Nuys, California. Riddell's insurance policies are different from the NFL's insurance policies. The NFL still is in New York, however, and most of the witnesses and documents for the NFL case still are

14

not in California. The Riddell case does not make California a convenient location for the NFL case. [¶] Sixth, the NFL cites previous litigation with TIG Insurance concerning the duty to defend the NFL against an intellectual property lawsuit by the Oakland Raiders. This old California suit has no bearing here. [¶] Seventh, the NFL points to places where teams have played Super Bowls and so forth. These facts are engaging but not relevant to this insurance coverage dispute. [¶] Apart from the balancing of private concerns, there is also the matter of public policy and the public interest. [Citing *Stangvik, supra,* 54 Cal. 3d at pp. 757-760.] 'The public interest factors include avoidance of overburdening local courts with congested calendars, protecting the interests of potential jurors so that they are not called upon to decide cases in which the local community has little concern, and weighing the competing interests of California and the alternate jurisdiction in the litigation.' (*Id*. page 751.) [¶] The State of California has no reason to ensure California judges and jurors decide this particular dispute. [¶] In *Century Indemnity*, *supra* . . . , the court noted Hawaii had a public policy interest in interpreting insurance policies issued in Hawaii to Hawaii residents . . . . The insurance issues in this case involve no California public policies. As a state, California is indifferent about which insurers may or may not owe the NFL. These concerns are exclusively private. This is not a case like *Ford Motor Co. v. Insurance Co. of North America* (1995) 35 Cal.App.4th 604, 614, which implicated California's 'fundamental interest in the preservation of the quality of its natural environment and in the remediation of toxic contamination within its borders.' [¶] The moving parties have met their burden. The motions are granted. This case is stayed in favor of the first-filed case in New York."

III.  LEGAL PRINCIPLES

A.  The trial court's duties

"When a court upon motion of a party or its own motion finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just." (Code Civ. Proc. §410.30, subd. (a); see *In re Marriage of Taschen* (2005) 134 Cal.App.4th 681, 687 (*Taschen*) ["in California forum non conveniens motions are governed by statute, not by policies embedded in case law predating the statute's enactment"]; accord *Stangvik v. Shiley, supra,* 54 Cal.3d 7at p.749 (*Stangvik*).)

A trial court considering a forum non conveniens issue engages in a two-step process, the first of which is to determine whether a suitable alternative forum exists. (*Stangvik, supra*, 54 Cal.3d at p. 751; *Guimei v. General Electric Co.* (2009) 172 Cal.App.4th 689, 696 (*Guimei*).)  Where there is a suitable alternative forum, the court proceeds to the next step, consideration of the private interests of the parties and the public interest in keeping the case in California.  (*Stangvik*, *supra*, at pp. 751, 754; *Century Indemnity Co. v. Bank of America, supra,* 58 Cal.App.4th at p. 412 (*Century*).)

"'The private interest factors are those that make trial and the enforceability of the ensuing judgment expeditious and relatively inexpensive, such as the ease of access to sources of proof, the cost of obtaining attendance of witnesses, and the availability of compulsory process for attendance of unwilling witnesses.' (*Stangvik, supra*, 54 Cal.3d at p. 751.)  The residences of the plaintiff and the defendant are relevant, and a corporate defendant's principal place of business is presumptively a convenient forum.  (*Id*. at pp. 754-755.)  If the plaintiff is a California resident, the 'plaintiff's choice of a forum should rarely be disturbed unless the balance is strongly in favor of the defendant.  [Citations.]' (*Id*. at p. 754; see *Bechtel Corp. v. Industrial Indem. Co*. (1978) 86 Cal.App.3d 45, 51-53.)  The public interest factors include avoidance of overburdening California courts,

16

protecting potential jurors who should not be called on to decide cases in which the local community has little concern, and weighing the competing ties of California and the alternate jurisdiction to the litigation. (*Stangvik*, [*supra*,] at p. 751.)'" (*Animal Film, LLC v. D.E.J. Productions, Inc.* (2011) 193 Cal.App.4th 466, 473; see also *Great Northern Ry. Co. v. Superior Court* (1970) 12 Cal.App.3d 105, 112-115 (*Great Northern*) [listing 25 relevant factors].)

The defendant, as the moving party, bears the burden of proof on a motion based on forum non conveniens. (*Stangvik*, *supra*, 54 Cal.3d at p. 751; *Animal Film*, *LLC v. D.E.J. Productions, Inc., supra*, 193 Cal.App.4th at p. 472.) It is the trial court's duty to weigh and interpret evidence and draw reasonable inferences therefrom. (*Guimei, supra*, 172 Cal.App.4th at p. 698.)

## B. Standard of review on appeal

Had the suitability of an alternate forum been disputed in the present case, the trial court's ruling on that point would have been subject to either a de novo or substantial evidence review on appeal. (*Investors Equity Life Holding Co. v. Schmidt* (2011) 195 Cal.App.4th 1519, 1528 (*Investors Equity*) [de novo standard]; *Guimei*, *supra*, 172 Cal.App.4th at p. 696 [substantial evidence standard].) However, there is no dispute here that New York is a suitable alternate forum.

The second part of the analysis, the weighing and balancing of private and public factors, is reviewed pursuant to an abuse of discretion standard; "substantial deference" is accorded the trial court's ruling. (*Stangvik*, *supra*, 54 Cal.3d at p. 751.) "We 'will only interfere with a trial court's exercise of discretion where [we find] that under all the evidence, viewed most favorably in support of the trial court's action, no judge could have reasonably reached the challenged result.'" (*Guimei, supra*, 172 Cal.App.4th at 696 (internal citations omitted).) "'"[A]s long as there exists 'a reasonable or even fairly debatable justification, under the law, for the action taken, such action will not be . . . set

17

aside."'"" (*Ibid*., (citation omitted); see *Taschen*, *supra*, 134 Cal.App.4th at p. 691 ["appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason"].)[7]

The court of appeal "cannot reweigh the evidence or draw contrary inferences. [Citations.] We presume the trial court found every fact and drew every reasonable inference necessary to support its determination. [Citation.] We cannot reject evidence accepted by the trial court as true unless it is physically impossible or its falsity is obvious without resort to inferences or deduction. [Citation.]" (*Guimei*, *supra*, 172 Cal.App.4th at pp. 698-699.)

## IV. DISCUSSION

### A. Contentions on appeal concerning the burden of proof in the trial court

Although NFL agrees that abuse of discretion is the standard on appellate review of a trial court's weighing and balancing of private and public interests in the forum non conveniens context, it argues the trial court erred to NFL's detriment in several respects regarding the moving party defendants' burden of proof at the trial court level. NFL contends it is a California resident for purposes of the forum non conveniens analysis, because, as an unincorporated association of member football clubs, it resides wherever its members are located. In the alternative, NFL argues that, regardless of residency, the trial court erred in failing to strongly presume in favor of plaintiff's choice of forum.

---

[7] Whether the trial court's discretion widens when it imposes a stay rather than a dismissal is at issue in this appeal, and will be discussed below. We conclude that it does widen, relying in part on *Century, supra*, 58 Cal.App.4th at page 411. (See also *Archibald v. Cinerama Hotels* (1976) 15 Cal.3d 853, 860 (*Archibald*) [noting that in considering a stay the trial court can take into account any consideration which bears on the relative suitability or convenience of the two forums].)

18

NFL further faults the trial court for not requiring defendants prove California is a *seriously inconvenient* forum.  Finally, NFL contends the court below erroneously gave dispositive deference to defendant insurers' New York lawsuits and erroneously shifted the burden of proof to plaintiffs.

B.  NFL is not a California resident for purposes of a forum non conveniens analysis

In the introductory portion of its ruling, the trial court states:  "The National Football League is headquartered in New York. It has been there 50 years or more."  Later in the decision, the court states:  "The NFL selected California -- true -- but 'that factor is of lesser significance' because the NFL is not a California resident.  (*Century Indemnity Co. v. Bank of America, supra*, 58 Cal.App.4th 408, 412.)"  Further along in its decision, the court added, "The NFL raises . . . other unpersuasive points.  First, the NFL urges that it is not a corporation but rather an unincorporated association of football clubs.  The form is inconsequential.  Whatever it is, the NFL long has had its headquarters in New York.  New York is the NFL's physical center of operations:  where its important people go to work, directing NFL affairs.  New York is where these executives make and keep their important documents.  [¶]  Second, the NFL lists its past contacts with California.  These contacts, however, are in the past.  The question today is not the jurisdictional one, where the extent of past contacts affects the fairness of summoning a defendant to some remote court.  Instead, today's question is about convenience.  What is convenient today depends on today's conditions.  The past is gone."

On appeal, NFL again asserts the argument reflected in the final quotation above, i.e., as an unincorporated association it legally resides wherever its member football clubs are located.  (See *American Needle Inc. v. NFL* (2010) 560 U.S. 183 [130 S.Ct. 2201, 2209-2214] [in antitrust context, NFL and its teams are best understood as a joint venture rather than a single entity].)  NFL relies on authority in a variety of procedural and

19

jurisdictional contexts, such as federal diversity and the proper venue for suing an unincorporated association, which it argues should be given weight in the forum non convenience analysis. (*Carden v. Arkoma Assocs.* (1990) 494 U.S. 185, 195-196 [federal diversity jurisdiction as to an unincorporated association depends on citizenship of its members]; *Westinghouse Electric Corp. v. Superior* Court (1976) 17 Cal.3d 259, 276 [in context of defense motion to change venue within California where plaintiff is a multi-county public agency, holds unincorporated moving party resides in county where it does substantial business]; *Metropolitan Transit System v. Superior Court* (2007) 153 Cal.App.4th 293, 305 [dealing with cross-defendant's right to change venue within California when cross-complainant is local public agency; dictum indicates an unincorporated entity resides where its members reside for purposes of such motions]; *Mosby v. Superior Court* (1974) 43 Cal.App.3d 219, 229 [dealing with proper county within California for suit against individuals and their wholly owned unincorporated business].) Given that approach, argues NFL, it would be a California resident entitled to the preference afforded a resident plaintiff's choice to file in its home state. (*Stangvik*, *supra*, 54 Cal.3d at pp. 754-755.)

We view the cited cases as having little bearing on residency in the present context. Venue and jurisdiction involve the power of the court to hear and determine a cause of action. The forum non conveniens doctrine assumes such power and focuses instead on equitable reasons for a court to decline to exercise it. (See S*tangvik*, *supra*, 54 Cal.3d at p. 751; accord *Gulf Oil Corp. v. Gilbert* (1947) 330 U.S. 501, 507 (*Gilbert*) ["The principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute. . . . A plaintiff sometimes is under temptation to resort to a strategy of forcing the trial at a most inconvenient place for an adversary, even at some inconvenience to himself."].)

No California case has decided the issue of residency of an unincorporated association in the inconvenient forum context. We hold that a multi-state unincorporated

20

association is not necessarily entitled to a strong presumption of the convenience of a California forum simply because some of its members reside here. Rather, in its forum non conveniens analysis, a trial court must evaluate the nature of the plaintiff's organization and activities, including any principal place of business aside from those of its members, as part of the overall duty of determining the relationship of the case and parties to the forum.

Thus, a business primarily based outside of California, whether or not incorporated, may or may not be entitled to some preference based on its extensive contacts in this state. (Compare *Ford Motor Co. v. Insurance Co. of North America* (1995) 35 Cal.App.4th 604, 612 (*Ford*) [Ford Motor Company entitled to deference in favor of California forum where it was a California "taxpayer, employer and property owner"] with *Appalachian Ins. Company v. Superior Court* (1984) 162 Cal.App.3d 427, 436 [forum non conveniens dismissal upheld despite the fact that both the out-of-state corporate plaintiff and the out-of-state corporate defendant maintained substantial business operations in California].) Further, a business domiciled in multiple states is not entitled to the same preference as a plaintiff that resides only in California. (*Gould, Inc. v. Health Sciences*, *Inc.* (1976) 54 Cal.App.3d 687, 693 (*Gould*) [large corporation with principal place of business in Illinois and operations in many states is not entitled to same preference as a plaintiff who is solely located in California].) As the cases summarized in this opinion illustrate, inconvenient forum issues arise in a wide variety of factual situations. A case-by-case examination of the parties, their dispute and the relationship of each to the state of California is the heart of the required analysis. (*Stangvik, supra,* 54 Cal.3d at p. 754; *Gould*, *supra*, at p. 692.)[8]

---

[8] We choose not to join the parties' debate about whether an unincorporated association is a "jural entity." The concept may have relevance in other contexts but we do not find it helpful or persuasive here, where the unincorporated NFL plaintiff has taken advantage of the California statutory power to sue (Code Civ. Proc. § 369.5), then seeks shelter in an argument that it is not a legal entity for forum non conveniens

21

Here the trial court, well aware of the primary place of business of the 49ers, Raiders and Chargers, properly exercised its discretion in assessing the nature of the NFL plaintiffs' businesses as they relate to California as a forum. The court's broad statement that NFL is not a California resident must be considered in light of its conclusion that technicalities regarding the form of plaintiffs' association are outweighed by the undisputed fact of plaintiffs' decades-long existence as New York entities[9] separate and apart from the member teams. (*See American Needle v. NFL, supra*, 130 S.Ct. at pp. 2212-2213.) The record also shows that both NFL plaintiffs have their headquarters in New York, run their operations from there, brokered the majority of their insurance policies from there, have their important documents and key executives there and have personnel involved in this coverage litigation employed there. Further, the trial court would have been aware that the players making claims against the NFL entities allege in the federal MDL proceeding in Pennsylvania that "all NFL policies and decisions relevant to the conduct alleged herein occurred primarily in the NFL corporate offices in New York."

The trial court properly recognized that NFL operates in New York independently of its teams, and properly considered the effect of that practical reality in its balancing of the private and public interest factors. Those factors focus on practical concerns such as access to witnesses and evidence, the costs of litigation, and the interests of California and its citizens in deciding the dispute. When weighing such concerns, the trial court was legally correct and well within the bounds of reason in denying NFL the status of a full-fledged California resident.

---

purposes. (Compare *People ex rel. Totten v. Colonia Chiques* (2007) 156 Cal.App.4th 31, 40 [a street gang is a jural entity for purposes of an injunction].)

[9] Plaintiff NFL Properties is a Delaware corporation headquartered in New York City. It was not registered to do business in California at the time this lawsuit was filed.

C. Neither the "strong presumption" nor "seriously inconvenient" standard
was applicable in the present case


NFL asserts error by the trial court in failing to recognize that all plaintiffs are entitled to a strong presumption in favor of their choice of forum and in failing to require defendant insurers to demonstrate that California is a seriously inconvenient forum. The trial court rejected these arguments, noting that such standards are not imposed in the *Stangvik* opinion. The court also noted that these higher burdens would be counterproductive to the concern raised in *Stangvik* regarding the potential effect on the California court system from "an unchecked and unregulated importation of transitory causes." The trial court also relied heavily on *Century*, *supra*, 58 Cal.App.4th at page 412, which rejected both the strong presumption and serious inconvenience standards where the trial court stays rather than dismisses a California action filed by a nonresident. The *Century* court specifically distinguished *Ford*, *supra*, 35 Cal.App.4th 604, on which NFL relies, as a case involving a dismissal rather than a stay.[10]

On appeal, the insurers rely heavily on the stay/dismissal distinction in defending the trial court's burden of proof calculus. Defendants also argue that *Ford* is an aberrant decision which the trial court properly ignored. NFL counters with the contention that *Century* was wrongly decided as to the burden of proof issue. We hold that the trial court committed no error.


1. Seminal forum non conveniens case law


The forum non conveniens doctrine developed as a dismissal remedy for cases where some or all parties were nonresidents, and plaintiff's choice of an inconvenient

---

[10]    The *Century* court did acknowledge that, even where a stay rather than a dismissal is involved, a California resident plaintiff is entitled to a "strong preference" as to its choice to file in its home state. (*Century*, *supra*, 58 Cal.App.4th at p. 412.)

venue unfairly burdened a defendant or the court with the task of litigating out-of-state events. (See *Price v. Atchison, Topeka & Santa Fe Ry. Co.* (1954) 42 Ca1.2d 577, 580 (*Price*) [New Mexico resident sued a Kansas corporation in Los Angeles Superior Court against regarding injuries sustained in railroad accidents that occurred in New Mexico].) Even in such cases it was held that California "has no policy . . . of discrimination against . . . noncitizens of California . . . in determining when a nonresident of this state will be given access to state courts to litigate a cause of action which arose elsewhere," (*id*. at p. 583) and that, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." (*Id.* at p. 585.) California courts were guided as to the proper burden of proof and analysis by earlier United States Supreme Court decisions. (See e.g. *Gilbert, supra,* 330 U.S. 501, 508 ["unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed"]; *Piper Aircraft Co. v. Reyno* (1981) 454 U.S. 235, 249, fn. 15 (*Piper*) [doctrine applies when plaintiff chooses forum "not because it is convenient, but solely in order to harass the defendant or take advantage of favorable law"].)

A corollary to the early rule banned dismissals, except under extraordinary circumstances, in actions filed by California residents, because such plaintiffs are entitled as a matter of overriding state policy to redress their grievances in their own court system. (*Thomson v. Continental Ins. Co*. (1967) 66 Ca1.2d 738, 742; *Archibald, supra,* 15 Cal. 3d at pp. 858-859; accord *Goodwine v. Superior Court* (1965) 63 Ca1.2d 481, 485-486 ["[a] determination that a plaintiff is domiciled [in California] would ordinarily preclude granting the defendant' s motion for dismissal on the grounds of *forum non conveniens*"].)


2. Codification in California


When the inconvenient forum doctrine was codified in 1969, the California Legislature recognized that imposing a stay is a viable alternative to dismissal in

24

appropriate cases, even in cases filed by California residents.  Code of Civil Procedure section 410.30, subdivision (a) provides:  "When a court upon motion of a party or its own motion finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just."  In its comment to the newly enacted statute, the California Judicial Council explained as follows:  "Section 410.30 gives statutory recognition to the doctrine of *forum non conveniens*, which authorizes a court to decline to exercise its jurisdiction in appropriate instances on the ground that the plaintiff has unfairly or unreasonably invoked the jurisdiction of an inconvenient forum."  (West's Ann. Code Civ. Proc. (2004 ed.) vol. 14A, §410.30, p. 486.)  The comment further states, "Under the doctrine of inconvenient forum, a court, even though it has jurisdiction, will not entertain the suit if it believes that the forum of filing is a seriously inconvenient forum for the trial of the action."  (*Ibid.*)  The comment goes on to cite the Restatement (Second), Conflict of Laws (1971), for the proposition that the "two most important" factors a court should consider are:  "(l) that since it is for the plaintiff to choose the place of suit, his choice of a forum should not be disturbed except for weighty reasons, and (2) that the action will not be dismissed unless a suitable alternative forum is available to the plaintiff."  (*Id*. at p. 488; other citations omitted.)[11]

It cannot be ignored that the California inconvenient forum doctrine is now embedded in statute.  (*Taschen*, *supra*, 134 Cal.App.4th at p. 687.)  One of the purposes of the enactment of section 410.30 was to give "less weight to the plaintiff's domicile or residence."  (*Delfosse v. C.A.C.I., Inc.-Federal* (1990) 218 Ca1.App.3d 683, 688, fn 4 (*Delfosse*).)  Yet, our appellate courts have given significant weight to the Judicial Council comment and the Restatement in applying the doctrine.  (See *Stangvik*, *supra*, 54 Cal. 3d at pp. 752-753; *Hahn v. Diaz-Barba*, *supra*, 194 Ca1.App.4th at p. 1186, fn. 5;

---

[11]    The Restatement Second at section 84, sets forth the *forum non conveniens* doctrine as follows:  "A state will not exercise jurisdiction if it is a seriously inconvenient forum for the trial of the action provided that a more appropriate forum is available to the plaintiff."  (Rest.2d Conf. of Laws, §84).

*Delfosse*, *supra*, 218 Ca1.App.3d at p. 689.)  It follows that NFL correctly points out that the strong presumption in favor of plaintiff's choice of forum and the seriously inconvenient burden of proof are longstanding principles within the forum conveniens doctrine.  We turn to post-codification cases to determine whether those standards were properly distinguished by the trial court in the present case.


3.  California does not recognize a strong presumption in favor of a nonresident plaintiff's choice of forum


The leading California Supreme Court case in the era subsequent to the enactment of section 410.30 is *Stangvik, supra*, 54 Cal.3d at page 744.  Prior to *Stangvik*, a number of court of appeal cases involving *California resident* plaintiffs took note of the strong presumption in favor of the correctness of plaintiff's choice of forum.  (See *Bechtel Corp. v. Industrial Indem. Co.*, *supra*, 86 Cal.App.3d at pp. 50-51 [stay order reversed in a case where a California engineering firm sued the carrier of its employee fidelity bonds to recover for damages the firm would be paying for its employees' misconduct in the course of a Maryland project; the  court of appeal cited *Gilbert, Price* and other cases for the proposition that "'unless the balance is *strongly in favor* of the defendant, the plaintiff's choice of forum should rarely be disturbed'"]; *Dendy v. MGM Grand Hotels, Inc.* (1982) 137 Cal.App.3d 457, 460 [stay upheld where individual California residents sued over injuries sustained in a major Las Vegas hotel fire; despite ruling that California was an inconvenient forum, the  court of appeal noted, "[T]his doctrine should be applied sparingly as it is recognized that a plaintiff's choice of forum should be respected unless equity weighs strongly in favor of the defendant.  [Citations.]".])  At least one pre-*Stangvik* case involving a *nonresident plaintiff* also made reference to something akin to a strong presumption.  (See *Brown v. Clorox Co.* (1976) 56 Cal.App.3d 306, 311 [in the process of reversing a stay order in a case involving an out-of-state plaintiff suing a California corporation for not protecting children in its product manufacturing process,

26

the  court of appeal stated, "It is recognized that a plaintiff's choice of forum should not be disturbed except for weighty reasons . . . ."].)

Defendants contend a separate branch of the inconvenient forum doctrine traces to the post-codification California Supreme Court decision in *Archibald, supra,* 15 Cal.3d 853.  There the court focused on a trial court's power to stay, rather than dismiss, California proceedings filed by California residents.  (*Archibald*, *supra*, at pp. 857-860.) In evaluating a stay request, the court in *Archibald* said, "[t]he plaintiff's residence is but one of many factors which the court may consider.  The court can also take into account the amenability of the defendants to personal jurisdiction, the convenience of witnesses, the expense of trial, the choice of law, and indeed any consideration which legitimately bears upon the relative suitability or convenience of the alternative forums.  [Citing *Gilbert*, *Thomson*, *Goodwine*, and *Great Northern Ry. Co. v. Superior Court, supra,* 12 Cal.App.3d [at p.] 105].  In short, the trial court retains a flexible power to consider and weigh all factors relevant to determining which forum is the more convenient, and to stay actions by true California residents when it finds that the foreign forum is preferable." (*Id.* at p. 860.)

In pre-*Stangvik* cases courts of appeal cited *Archibald* for the proposition that less deference is to be afforded nonresident plaintiffs.  In *Corrigan v. Bjork Shiley Corp.* (1986) 182 Cal.App.3d 166, 171 (*Corrigan*), the court of appeal  reversed the stay of  a heart-valve product liability case filed against a California corporation by residents of Australia.  The court stated, "Although the rule of substantial deference is not eliminated when plaintiff is foreign (either noncitizen or nonresident), the deference accorded his choice is less than that accorded the choice of a California resident.  [Quoting and citing *Archibald.*]"  (*Id.* at p. 176.)  The court summed up by stating, Therefore, . . . although the Australian plaintiffs' choice of a California forum is entitled to some deference, this consideration cannot dominate our decision."  (*Ibid.*)

*Corrigan* was followed in a case involving an American corporation, *Celotex Corp. v. American Ins. Co.* (1987) 199 Cal.App.3d 678.  There the  court of appeal

27

affirmed a stay in an asbestos coverage dispute between plaintiff, a Delaware corporation with its principal place of business in Florida, and two insurance carriers who principally did business in California. Related actions were pending in federal district courts in Ohio and Florida. (*Id.* at pp. 680-681.) After noting the importance ascribed to plaintiff's choice of forum in the above-mentioned Judicial Council comment to section 410.30, which the court characterized as "substantial deference," the court concluded "the deference accorded a nonresident plaintiff is less than that accorded a California resident," citing *Corrigan*, *supra,* 182 Cal.App.3d at page 683.

These dueling lines of cases set the stage for the California Supreme Court's 1991 decision in *Stangvik*, *supra*, 54 Cal.3d 744. We look to it for guidance even though it involved noncitizen plaintiffs, as distinct from the nonresident American plaintiffs in the instant case.

We have quoted above the *Stangvik* court's holding regarding the essential balancing process, which the court derived from the United States Supreme Court decisions in *Gilbert* and *Piper*. (See *Stangvik*, *supra*, 54 Ca.3d at p. 751.) For purposes of the present discussion, it is noteworthy that the court in *Stangvik* was reviewing a trial court stay order in a wrongful death case involving Swedish and Norwegian plaintiffs suing the California designer and manufacturer (Shiley) of allegedly defective heart valves which had been purchased and implanted in Sweden and Norway with fatal results. (*Id.* at pp. 749-750.) The court noted that at the time of the trial court's ruling 108 similar cases against Shiley had been filed in California by foreign plaintiffs, and that the number had increased substantially by the time Supreme Court briefs were filed. (*Id.*at p. 758.) The court affirmed the stay after a detailed review of the public and private interests involved. (*Id.* at pp. 761-764.)

Citing its earlier opinion in *Price*, the court in *Stangvik* noted the basis of the inconvenient forum doctrine is the need to give preference to California residents and guard against the """"unchecked and unregulated importation of transitory causes of action for trial in this state."""" (*Stangvik*, *supra*, 54 Ca.3d at p. 751.) The court affirmed that

28

the moving party defendant bears the burden on the motion and that the trial court's discretionary ruling is accorded "substantial deference" on appeal. (*Ibid.*) Again citing *Gilbert* and *Piper*, the court in *Stangvik* emphasized that no single factor controls the analysis; it added that although there is ordinarily a "strong presumption" in favor of a plaintiff's choice of forum, "less deference" is given to foreign plaintiffs. (*Id.* at p. 753.) The court reiterated that in the case before it the Scandinavian plaintiffs' choice to sue in California "is not a substantial factor in favor of retaining jurisdiction here." (*Id.* at p. 755, fn. omitted.) The court also stated a *defendant's* residence is a factor to be considered in the convenience balance, and that a corporate defendant's place of incorporation and principal place of business is "presumptively a convenient forum," though not conclusively so. (*Id.* at p. 755.) In this regard the court added that a defendant's "cumulative connection with California is an appropriate matter for consideration in deciding a forum non conveniens motion," along with other matters bearing on the issue of undue burden on the California court system. (*Id.* at pp. 760-761.)

As noted the *Stangvik* opinion states quite clearly that a plaintiff from a foreign country is not entitled to a strong presumption of the correctness of its choice of forum. As the present parties point out, the opinion contains dictum to the effect that the strong presumption should be limited to California residents, but expressly declines to reach the issue. (*Stangvik*, *supra*, 54 Ca.3d at p. 755, fn. 7.) Thus, the issue of whether a plaintiff who is a nonresident citizen of the United States is entitled to a "strong presumption" or "substantial deference" remained open for the competing decisions relied on by the parties in the present case.

As mentioned, the NFL plaintiffs rely on the *Ford* case, decided by the court of appeal four years after *Stangvik*. In 1992, Ford Motor Company (Ford) filed a coverage action related to three polluted industrial sites in California. One site had been an assembly plant operated by plaintiff Ford from 1955 to 1983. The other two sites had been operated by a subsidiary, Ford Aerospace Corporation, until 1988 and 1990, respectively. In 1990 Ford sold the subsidiary, but retained an interest in one of the

29

polluted properties. (*Ford*, *supra*, 35 Cal.App.4th at pp. 607-608.) The defendants were various insurance carriers with whom Ford, through its Michigan headquarters, had contracted for coverage for its properties and operations in California. (*Id*. at p. 608.) None of the defendants was either incorporated or headquartered in California or the potential alternate venue, Michigan. Ford's principal place of business was in Michigan, but it was not incorporated there or in California. (*Id.* at p. 609.) The California trial court *dismissed* Ford's action on forum non conveniens grounds. (*Id*. at pp. 609-610.) The court of appeal reversed, in light of a "wealth of factors favoring California as a forum" (*id.* at p. 618), including the fact that plaintiff Ford was a "California taxpayer, employer and property owner" whose operations led to pollution at various sites in California which this state had a significant interest in remediating. (*Id*. at p. 612.) As to the applicable legal standard, the court of appeal remarked that "great weight" should be afforded to even a nonresident plaintiff's choice of forum. (*Id.* at p. 610.) The court also referred to the standard as a "strong presumption." (*Id.* at p. 611.) For these propositions, the *Ford* court cited to the aforementioned U.S. Supreme Court cases, *Gilbert* and *Piper*, as well as the California Supreme court's *Stangvik* and *Price* decisions. (*Ibid.*)[12]

Just two years after *Ford*, a different court of appeal district decided the case relied on by the instant trial court and defendants, *Century*, *supra*, 58 Cal.App.4th 408. *Century* involved two insurer plaintiffs, one a California resident, the other incorporated in Pennsylvania. A coverage dispute developed between plaintiffs and their insured, an Oregon bank. (*Century*, *supra*, at pp. 410-412.) The policies at issue had been sold to the bank in Hawaii, where the allegedly covered event took place. Thirteen days after the

---

[12]    As noted above, *Ford* also cites to *Northrup Corp. v. American Motorists Ins. Co.* (1990) 220 Cal.App.3d 1553 (*Northrup*) a pre-*Stangvik* court of appeal decision involving a resident California corporation as plaintiff. *Ford's* reliance on *Northrup* is discussed further below, in connection with the issue of whether the moving party's burden includes a showing that the California forum is "seriously inconvenient." As to the issue under discussion here, however, *Northrup* is not helpful to NFL because, unlike the plaintiff in *Northrup*, NFL does not reside in California.

bank sued for declaratory relief in Hawaii, the carriers filed a similar action in California. The bank's dismissal motion was denied by the California trial court; instead, the court stayed the action and the carriers appealed. (*Id.* at pp. 410-411.) In setting the legal ground rules, the court of appeal acknowledged that the resident insurer plaintiff was entitled to a strong "preference" as to its choice of forum; as to the nonresident, "that factor is of lesser significance." (*Id.* at p. 412.) Beyond that, the court in *Century* took its lead from California Supreme Court precedent, noting, for instance, that discretion to stay is "considerably wider" than to dismiss, citing *Thomson v. Continental Ins. Co.*(1967) 66 Cal.2d 738, 746, fn. 4. (*Century*, *supra*, at p. 411.) The *Century* decision also cites *Archibald*, *supra*, 15 Cal.3d at page 860, for the proposition that "in considering a stay the trial court can take into account any consideration which bears on the relative suitability or convenience of the two forums." (*Century*, *supra*, at p. 412.) For guidance concerning the actual factors a court must consider, the court in *Century* cited and followed *Stangvik*. (*Id.* at p. 412.)

Like NFL in the present case, the insurer plaintiffs in *Century* cited the "strong presumption" and "*seriously inconvenient*" language in *Ford*, *supra*, as defining the moving party's burden of proof. (*Id.* at p. 412.) The court in *Century* declined to follow *Ford* because *Ford* involved a dismissal rather than a stay. (*Ibid.*) The court again quoted the Supreme Court's *Archibald* decision, "'[i]n considering whether to stay an action, in contrast to dismissing it, the plaintiff's residence is but one of many factors which the court may consider. [Citation.]'" (*Century*, *supra*, 58 Cal.App. 4th at p. 413.) The court then completed its analysis of the *Stangvik* factors and, finding no abuse of discretion, upheld the trial court's stay order as to both the resident and nonresident plaintiffs. (*Id.* at pp. 413-414.)

The results in *Ford* and *Century* are understandable given the facts of each case, the procedural posture on appeal, and the applicable abuse of discretion standard. In *Ford*, a trial court abused its discretion when it *dismissed* a coverage case filed in California by a nonresident corporate insured that was a California landowner and

31

taxpayer, where the underlying event was pollution of California land by the plaintiff, the plaintiff was the only party connected to the potential alternate forum (Michigan), and none of the parties formally resided in California. In *Century*, a coverage action brought by both resident and nonresident insurers against a nonresident corporate defendant, was properly *stayed* in favor of a first-filed action in the venue where the allegedly covered event took place (Hawaii). As to the legal semantics, however, the two cases cannot be reconciled. *Ford*, involving a nonresident plaintiff, states that even nonresidents are entitled to a "strong presumption of appropriateness" as to their choice of forum. (*Ford*, *supra*, 35 Cal.App.4th at pp. 611.) *Century* expressly rejects the *Ford* standard where a stay is involved, and holds that a nonresident plaintiff's choice of forum is of "lesser significance." (*Century*, *supra*, 58 Cal.App.4th at p. 412; accord *Boaz v. Boyle & Co.* (1995) 40 Cal.App.4th 700, 713 [in upholding an order *dismissing* a defective heart-valve case filed in California by nonresident plaintiffs who asserted their choice of forum was entitled to substantial weight, the court stated, "That factor derives most of its meaning from cases in which the plaintiff is a resident of the forum state, and in a position to claim its protection."; *Campbell v. Parker-Hannifin Corp.* (1999) 69 Cal.App.4th 1534, 1543 (*Campbell*) [statements in *Ford* and *Hansen v. Owens-Corning Fiberglas Corp.* (1996) 51 Cal.App.4th 753 (*Hansen*) that nonresident plaintiff's choice of forum is entitled to great weight "are contrary to the express language of our Supreme Court in *Stangvik . . .*"].) A further significant conflict between the two cases is that *Ford* sets up its higher standards as part of the moving party's burden of proof. (*Ford*, *supra*, at p. 611 ["Unless defendants met their burden, the trial court necessarily abused its discretion."].) As *Century* pointed out, such an overlay runs counter to the California Supreme Court's instruction that, where only a stay is imposed, all factors including residence are weighed and balanced by the trial court, subject only to abuse of discretion review. (*Century*, *supra*, at p. 413.)

We thus conclude from the teachings of *Archibald* and *Stangvik*, as interpreted by the most well-reasoned decisions of our court of appeal colleagues, that a resident of one

of our sister states who files suit in California is entitled to due deference under the circumstances presented, not a strong presumption, in favor of its choice of forum. That deference is to be weighed and balanced by the trial court along with all the other pertinent factors, including the defendant's residence or principal place of business, and has no direct bearing on the moving defendant's burden of proof. We therefore disagree with the contrary language in cases such as *Ford*, which assert that all U.S. citizen plaintiffs' choices of forum are entitled to great weight. Consequently we reject NFL's contention that the trial court erred in failing to strongly presume in favor of NFL's choice of a California forum. Further, the trial court properly considered NFL's contacts with California as one of the *Stangvik* factors, rather than an overarching presumption affecting the burden of proof.

### 4. A party asserting forum non conveniens as grounds for a stay need not demonstrate that California is a seriously inconvenient forum

NFL's contention that the moving party's burden of proof in a forum non conveniens motion includes proving California is a "seriously inconvenient" forum also relies heavily on the *Ford* case, which we have discussed above. To review, in *Ford* the court of appeal overturned a trial court dismissal of a coverage action filed by a nonresident corporate plaintiff where the underlying issue was liability for cleaning up polluted California properties where plaintiff and its subsidiary had operated for lengthy periods in the recent past. The defendants were various insurance carriers, also not California residents. (*Ford*, *supra*, 35 Cal.App.4th at pp. 607-610.) The court of appeal reversed, in light of a "wealth of factors favoring California as a forum" (*id.* at p. 618), including the fact that plaintiff Ford was a California taxpayer, employer and property owner, and the polluted properties were in California. (*Id.* at pp. 612-613.) In imposing the questionable "strong presumption" standard discussed above, the court summarized the moving party's burden of proof in the following language: "The analysis . . . must

33

start from the premise that defendants bore the burden of producing sufficient evidence to overcome the strong presumption of appropriateness attending plaintiff's choice of forum. . . . [T]he inquiry is not whether Michigan provides a *better* forum than does California, but whether California is a *seriously inconvenient* forum. (*Northrup Corp. v. American Motorists Ins. Co., supra,* 220 Cal.App.3d at p. 1561.)" (*Ford, supra*, at p. 611.)

As the passage just quoted reveals, the *Ford* court cited only page 1561 of the *Northrup* opinion for the proposition that the "seriously inconvenient" burden arises out of the "strong presumption of appropriateness attending plaintiff's choice of forum." *Northrup*, decided a year before *Stangvik*, involved a major California corporation seeking declaratory relief as to its primary liability carrier's duty to cover a hazardous chemical spill which had taken place in Massachusetts. (*Northrup, supra*, 220 Cal.App.3d at p. 1557.) Not surprisingly, the court of appeal reversed the trial court's order dismissing the California plaintiff's California action. (*Ibid.*) However, one searches the *Northrup* opinion in vain for the words "seriously inconvenient." The court does engage in a lengthy discussion of whether the enactment of section 410.30, and a later amendment, changed the principle that a California resident's choice of a California forum is entitled to a strong presumption of correctness. (*Id.* at pp. 1559-1562.) But nowhere does the *Northrup* court make the leap from that maxim to the conclusion that a moving party must show the "serious inconvenience" of litigating in California.

In any event, defendants correctly assert that *Ford* and *Northrup* can be distinguished from the present case as to the remedy imposed by the trial court. Here the court imposed a stay, retaining jurisdiction over the case should the New York proceeding fail to dispose of the controversy. In *Ford*, *Northrup* and a number of other cases imposing the "serious inconvenience" or a similar burden of proof, the trial court *dismissed* the in-state action. (See, e.g., *Gilbert, supra*, 330 U.S. at p. 502; *Price, supra*, 42 Cal.2d at p. 579.)

34

However, NFL points out that at least two recent cases involving trial court stay orders have cited to *Ford* in support of a "seriously inconvenient" burden. *Taschen, supra,* 134 Cal.App.4th 681, was a German couple's marital dissolution action where the value of a large European corporation was at issue. The litigants lived part-time in California and part-time in Germany. The court of appeal cited only *Ford* for the proposition that the "moving party bears the burden of proving that 'California is a *seriously inconvenient forum.*'" (*Id.* at p. 691.) The court concluded that standard had been met, and upheld the stay order. (*Ibid.*)

Most recently, the court of appeal upheld a trial court's stay order in a case filed in California by Texas residents, alleging injury by exposure to toxic chemicals in the workplace for six years in California, followed by nearly 20 years of exposure in Texas. Twenty-one corporate defendants were sued, only two being California corporations. Citing only *Ford*, the court stated, "The ultimate question is whether the balancing of the *Stangvik* factors shows that California is a seriously inconvenient forum. [Citation.] The defendant, as moving party, bears the burden of proof." (*Morris v. AGFA Corp.* (2006) 144 Cal.App.4th 1452, 1464 (*Morris*).) When discussing the balancing of factors, the court noted that even nonresident plaintiffs' forum choices are entitled to "great weight," although "a plaintiff's choice of forum can be disturbed if the balance is strongly in favor of the defendant." (*Id.* at p. 1465.) For the latter principles, the *Morris* court cited *Ford*, *supra*, 35 Cal. App. 4th and *Hansen*, *supra*, 51 Cal.App.4th at p.760.[13]

---

[13]     The parties quarrel over whether the *Hansen* court's reference to the "seriously inconvenient" burden was an endorsement, or a mere recitation of the appellant's argument. We feel the pain of any litigant or trial court tasked with distilling and precisely articulating the burden of proof issue under discussion here. In any event, we note that *Hansen* was an asbestos class action lawsuit filed against 200 entities in California by a Montana decedent's family members, only one of whom was a California resident. The alleged injuries and interactions between the parties occurred in Montana and other states, not California. The trial court order staying the California action was affirmed on appeal. The court concluded the "strong presumption" (citing *Ford*, *supra*) in favor of plaintiffs' choice of forum had been overcome because the balance of interests strongly favored a Montana venue. (*Hansen*, *supra*, 51 Cal.App.4th at p. 760.)

35

We note the conspicuous absence of a line of California cases culminating in the "serious inconvenience" standard pronounced by the court in *Ford*. Although the verbiage appears in the comment generated by the Judicial Council when section 410.30 was enacted, it has not appeared in a California Supreme Court opinion. Both *Ford* and *Northrop* reversed trial court *dismissal* orders which were adverse to long-time California corporate plaintiffs seeking insurance coverage determinations. By contrast, *Taschen*, *Morris* and *Hansen*, the three "*Ford* progeny" cases summarized above, involved stay orders rather than dismissals. However, all three of those cases involved plaintiffs with tenuous connections to California and in each case the court of appeal had no trouble upholding the trial court's stay order without needing to closely examine the genesis or validity of *Ford's* articulation of the burden of proof.

We conclude that the phraseology "seriously inconvenient" as used in the Judicial Council Comment was intended to describe the quantum of evidence needed to justify a dismissal in the face of the strong presumption favoring a resident plaintiff's choice to sue in its home-state court system. *Ford* was not such a case, although the court there understandably gave weight to the plaintiff's past and present contacts with California, and the fact the underlying dispute revolved around the need to clean up polluted California land, one parcel of which was still owned by plaintiff Ford Motor Company. As we have noted, the present case does not involve a California-resident plaintiff, and there is no California land involved in the underlying dispute.[14] Here the trial court issued only a stay order, and plaintiffs are not California residents. Accordingly, the trial

---

[14] In the absence of authority from our Supreme Court we question whether the "serious inconvenience" terminology properly describes a moving party's burden of proof, even for dismissal motions against resident plaintiffs. The tenor of the *Archibald* and *Stangvik* opinions and cases closely following them suggest to us that all relevant circumstances bearing on the forum non conveniens calculus, including residence of the parties, should simply be considered by the trial court as part of the weighing and balancing process. (See, e.g., *Hansen*, *supra*, 51 Cal.App. 4th at p. 760, citing *Archibald* for the proposition that, "a plaintiff's residence is but one of many factors the court may consider.")

court properly ruled that *Ford* and its progeny were not controlling, and properly turned for guidance to more closely analogous cases, such as *Century*, *supra*, 58 Cal.App.4th 408, discussed on a related point earlier in this opinion.

*Century* involved a coverage dispute between a bank located principally in Oregon and its two carriers; one insurer was a California resident, the other was incorporated in Pennsylvania. The policies at issue had been sold to the bank in Hawaii, where the allegedly covered event took place. Thirteen days after the bank sued for declaratory relief in Hawaii, the carrier filed a similar action in California. The bank's dismissal motion was denied by the California trial court; instead, the court stayed the action and the carriers appealed. (*Century*, *supra*, 58 Cal.App.4th at pp. 410-411.) In setting the legal ground rules, the court in *Century* took its lead from California Supreme Court precedent, noting, for instance, that the high court had indicated discretion to stay is "considerably wider" than to dismiss, citing *Thomson v. Continental Ins. Co.*(1967) 66 Cal.2d 738, 746, footnote 4. (*Century, supra*, at p. 411; accord *Investors Equity*, *supra*, 195 Cal.App.4th at p. 1534 [citing *Century* for the proposition that discretion to stay is wider than to dismiss].) The court in *Century* also cited *Archibald*, *supra*, 15 Cal.3d at p. 860, for the proposition that "in considering a stay the trial court can take into account any consideration which bears on the relative suitability or convenience of the two forums." (*Century*, *supra,* at p. 412.) For guidance concerning the actual factors a court must consider, the court in *Century* cited and followed *Stangvik*. (*Id.* at p. 412.)

Like NFL in the present case, the insurer plaintiffs in *Century* cited the "strong presumption" and "seriously inconvenient" language in *Ford*, *supra*, as defining the moving party's burden of proof. (*Century*, *supra,* 58 Cal.App.4th at p. 412.) The court in *Century* declined to follow *Ford* because *Ford* involved a dismissal rather than a stay. (*Ibid.*) The court again quoted the Supreme Court's *Archibald* decision: "'[i]n considering whether to stay an action, in contrast to dismissing it, the plaintiff's residence is but one of many factors which the court may consider.' [Citation.]" (*Century, supra*,

37

at p. 413.) The court then completed its analysis of the *Stangvik* factors and, finding no abuse of discretion, upheld the trial court's stay order. (*Id.* at pp. 413-414.)

In sum, we find the *Ford* decision questionable and in any event inapposite. The present case, unlike *Ford*, does not involve a dismissal order adverse to a California resident. We respectfully disagree with *Taschen*, *Morris* and *Hansen* to the extent that they impose the "seriously inconvenient" burden on parties moving for a mere stay based on forum non conveniens. *Century*, on the other hand, we find to be well-reasoned and well-grounded in the teachings of our Supreme Court. We hold that the trial court properly declined to require defendant insurers to prove California is a seriously inconvenient forum in the present case. [15]

5. The trial court did not give dispositive deference to the New York action

The trial court's statement of decision included the following: "California is not a convenient home for this case, given that this case duplicates an older litigation in the NFL's home state of New York." It also referred to the California action as "a new and redundant case about the same insurance coverage dispute already being litigated in New York." Seizing on these findings, NFL contends the trial court "apparently" found the fact the New York case was "first-filed" to be a "dispositive" factor in the analysis. Such

---

[15]    The California Supreme Court has never elaborated on its statement in *Stangvik* that "defendant, as the moving party, bears the burden of proof." (*Stangvik, supra,* 54 Cal.3d at p. 751.) Courts of appeal have concluded from the "analytical framework set forth in *Stangvik*" that no substantial evidentiary showing, beyond the existence of an alternate forum, is required. (*Campbell, supra,* 69 Cal.App.4th at p. 1542; ["*Stangvik* did not require an extensive evidentiary showing."]; see *Morris, supra,* 144 Cal.App.4th at p. 1462 [no particularized affidavits required].) We agree. The moving party burden on a forum non conveniens motion appears to consist of establishing a suitable alternate forum and providing the trial court with sufficient facts to carry out its weighing and balancing analysis. Any additional requirements would appear to conflict with the clear mandate that the analysis is entrusted to the trial court's discretion.

a finding, argues NFL, erroneously shifted the burden of proof to plaintiff and is otherwise flawed.

We need not explore the disputes about whether a "first-filed" rule exists or the likely fate of the New York action, because we disagree with the premise that the court gave any improper weight to the existence or filing date of the New York case. The language quoted by NFL appears in the introductory section of the statement of decision, shortly before the trial court briefly addressed the threshold issue of whether New York is an adequate forum. We read the trial court's decision to have considered the existence of the New York case primarily as a strong indicator that such an alternative forum exists. The court thereafter proceeded to address the required balancing of private and public interests, as well as NFL's various arguments. We reject the notion that the trial court gave dispositive deference to the New York litigation as unsupported by the record.

6. The trial court did not shift the burden of proof on the defense motion to plaintiff NFL

Notwithstanding the trial court's express finding that the "moving parties have met their burden" of proof, NFL contends the trial court erred in "functionally" requiring NFL to prove the inconvenience of the New York forum. NFL argues this issue circumstantially, citing no direct evidence in the record. We reject NFL's claim of an improper burden shift.

NFL's argument relies heavily on its contentions that defendants' burden of proof was to show the serious inconvenience of the California forum and overcome a strong presumption in favor of plaintiff's choice of forum. We have already concluded that these arguments are flawed.

NFL notes the trial court's description of their California filing as "'selective and tactical.'" In argument before the trial court, NFL conceded this point, correctly contending "there is nothing wrong with lawyers and their clients proceeding tactically." We think the trial court elegantly summed up its view of this issue within the balancing

39

process when it stated at the hearing that a tactical filing decision is "not to be condemned, but neither is it to be cherished." The trial court properly considered filing tactics as a neutral factor in its analysis. (*Stangvik*, *supra*, 54 Cal.3d at pp. 763-764 [disapproving earlier cases which considered advantages to plaintiff of California law as a factor favoring denial of forum non conveniens motion].)

NFL contends the trial court's tentative ruling, comments during argument and final order "are replete with what the court felt the NFL had failed to show, while saying almost nothing about any showing made (or not made) by the insurers." Similarly, NFL alleges the statement of decision largely ignores facts on the "'California is seriously inconvenient' side of the ledger." These arguments are non-starters because the trial court was under no obligation to recite every fact considered in its balancing process or to follow any formula in explaining itself. The commonplace fact that a ruling focuses on the factors supporting it is not an indication that contrary evidence was ignored. Additionally, we note that once a presumption is rebutted or a burden met, the burden shifts to the responding party to overcome the moving party's rebuttal evidence. We believe that is exactly what occurred here, as illustrated by the trial court asking NFL during the argument on the motion what "counter-showing" they had to the "volumes of evidence that your colleagues have adduced . . . ."

Finally, we decline NFL's invitation to reweigh the individual facts contained in the trial court's ruling, given the abuse of discretion standard on appeal. (*Stangvik*, *supra*, 54 Cal.3d at p. 751.)

### D. The trial court's stay order was not an abuse of discretion

NFL attacks the trial court's exercise of its discretion in four ways. First, it argues the trial court "skewed" several factors by incorrectly concluding they weigh against the Los Angeles venue, when in fact they favor it or are neutral. Second, NFL contends the trial court ignored significant private and public factors that support retaining jurisdiction.

40

Third, the trial court allegedly gave undue emphasis to the burden on California's court system and taxpayers. Finally, NFL urges that California has a substantial interest in the coverage action. We will address each of these arguments while emphasizing that we reject NFL's implicit invitation to engage in a de novo review.

### 1. The trial court did not "skew" certain factors

The factors allegedly "skewed" by the trial court include the past California residency of the predecessor to plaintiff NFL Properties, the paucity of defendants who principally do business in New York, the relative abilities of the New York and Los Angeles courts to handle complex commercial matters, the absence of a California forum selection clause in the subject policies, and the difficulties of bringing evidence and witnesses to the ultimate forum. In each of these areas, NFL argues the trial court gave undue weight to the pro-New York arguments while neglecting or miscontruing the degree to which the issue favors a California forum. In other words, NFL asks us to reweigh the evidence and substitute our judgment for that of the trial court. This we cannot do. (*Stangvik*, *supra*, 54 Cal. 3d at p. 751.) Nor do we attach significance to the trial court's failure to mention any particular part of the evidence. Where the record is silent we draw all reasonable inferences in favor of the trial court's ruling, because that court had no duty to fully express the reasons for its ruling. (*Hahn v. Diaz-Barba*, *supra*, 194 Cal.App.4th at pp. 1187-1188.) Given the thoroughness of the briefing, argument and the court's written ruling, we have no doubt the court was mindful of all aspects of the record.

## 2. The trial court did not ignore significant factors

The first factor favoring a California forum allegedly ignored by the trial court is the fact that two defendants, Fireman's Fund and TIG, are California residents and they issued approximately half of the primary policies involved in the present case.

Fireman's Fund, which allegedly refused to defend the underlying tort litigation despite being a primary insurer, is a California corporation with its principal place of business here. However, it remains only one of 32 defendant insurers whose interests must be taken into account. Further, because of the inescapable fact that NFL does business in New York, that is where any legal injury has occurred.

TIG, a California corporation, allegedly issued 10 primary policies, more than any other defendant. Some were issued when TIG's principal place of business was in California. NFL notes that either the state of incorporation or primary business location of a corporate defendant is presumptively a convenient forum. (*Stangvik*, *supra*, 54 Cal. 3d at p. 755.) However, TIG's *current* principal place of business is in New Hampshire, while its affiliates' headquarters are in New Jersey. Relevant witnesses and documents are in those locations. California's interest in determining coverage for New York entities simply because a carrier is incorporated here is minimal at best.

The second factor NFL contends was erroneously ignored is the contacts, past and present, between plaintiffs and the state of California. These include: the fact that NFLP, the predecessor of NFL Properties, was a California corporation during its 38-year existence, and principally did business and bought insurance in Los Angeles between 1963 and 1970; and the multiple teams that have made California home, resulting in extensive community ties and, we are told, more NFL games having been played here over the last 50 years than any other state. NFL argues these long-term contacts are relevant in a case where the underlying torts and resulting coverage issues date back nearly 50 years. The trial court did not ignore these issues. Rather, it correctly pointed out that the issue at hand, convenience, depends on current circumstances, unlike a

42

"minimum contacts" jurisdictional issue. NFL Properties and its predecessor have done business principally in New York for over 40 years. California's interest in a *former* resident's entitlement to coverage for tort claims filed nationwide, mostly by non-California residents, is minimal.

NFL's third allegedly ignored factor, policies that were issued or brokered in California in the 1970's, along with possible 1960's California policies yet to be located, is unpersuasive. Only a handful of the 187 known policies were brokered in California, and those brokers have since merged with Chicago agencies. Most of the policies were placed by New York brokers, who cannot easily be compelled to appear for trial in California. Again, California's interest in litigating policies issued to a former resident corporation decades ago pales in comparison to New York's interest in resolving a case where the vast majority of policies were issued outside California through New York brokers to current New York residents. Thus, the trial court understandably gave short shrift to past contacts with California, as compared to the current state of affairs.

NFL next claims that because the first few of the underlying tort cases were filed in California, the first alleged coverage breaches took place here. Those cases, involving 12 percent of the 3,700 players who have sued, could eventually be returned for trial in a California federal court. The brain injury suits were predominantly filed outside of California, which is where most defense resources will be needed. And, again, any alleged breach of the duty to defend has injured NFL where it lives, in New York.

NFL's fifth contention is that it has interacted with California-based claims staff as to 70 of the 180 policies at issue, including representatives of five insurers with primary policy duties. NFL concludes that many of the alleged coverage breaches are occurring here, and many prospective witnesses are located here, along with significant discovery and trial evidence. This is a fair point, yet, using NFL's numbers, at least 117 policies have no association with California claims personnel. And, many of the 70 policies referenced above are being handled jointly by insurer employees in other states. All told, the relevant claims are being handled predominantly east of the Mississippi River, mostly

in the New England and mid-Atlantic states. As the trial court stated, "The balance tips against California."

The sixth allegedly undervalued factor raised by NFL is Los Angeles Superior Court's ruling "relating" the instant case to the *Riddell* coverage action, which was filed four months before NFL's case and remains pending in Los Angeles. NFL points out the two cases arise from the same underlying tort claims, and involve some of the same insurer defendants, as well as issues relating to NFL being an additional insured on policies issued to Riddell. This issue was not ignored by the trial court, which expressly found that the, "*Riddell* case does not make California a convenient location for [this case]." While it is arguable that certain efficiencies would occur should the two cases remain in the same Los Angeles courtroom, the cases involve coverage for different types of claims under different insurance policies, potentially governed by the laws of different states. NFL's coverage for products liability under Riddell's policies is not the same issue as its coverage under its own policies for other tort claims. Consequently, we disagree with NFL's contention that separating the two cases might lead to inconsistent results.

In sum, the above-discussed factors were expressly or impliedly considered by the trial court in its balancing process. They were not, as argued by NFL, undervalued or ignored. We find no abuse of discretion in the trial court's conclusion that, considered singly or in combination, they did not mandate a denial of the defense motions.

3. The trial court did not give undue emphasis to the burden on
California's court system and taxpayers

NFL notes cautionary language in *Stangvik* regarding avoiding undue emphasis on any single factor in the balancing analysis (*Stangvik*, *supra*, 54 Cal.3d at p. 753), and not using a forum non conveniens ruling to control one's docket (*id.* at p. 758). It argues the trial court abused its discretion by "giving the concern for court congestion and taxpayer burden . . . singular emphasis and great weight, without giving any counterweight to other

44

significant factors favoring retaining jurisdiction . . . ." This is a puzzling claim, given that consideration of public interest factors is one of the mandated categories a trial court must evaluate in response to an inconvenient forum motion. In *Stangvik* our Supreme Court stated, "The public interest factors include avoidance of overburdening local courts with congested calendars, protecting the interests of potential jurors so that they are not called upon to decide cases in which the local community has little concern, and weighing the competing interests of California and the alternate jurisdiction in the litigation." (*Stangvik*, *supra*, 54 Cal.3d at p. 751, citing *Piper*, *supra*, 454 U.S. at pp. 259-261.) Those are precisely the factors considered by the trial court in the present case. We find NFL's speculative claim that the court gave undue weight to them unpersuasive, and beyond the scope of our abuse of discretion review.

### 4. The trial court properly concluded California has no substantial interest in retaining this coverage action

Seizing on the trial court's comment in its written ruling that "nothing recommends California," NFL argues the trial court abused its discretion by giving no weight whatsoever to the factors discussed above in section D2 of this opinion. We have already examined those factors and explained why we are unpersuaded by the NFL's claims that they demonstrate an abuse of discretion. We review the trial court's action, not its precise reasoning, and especially not a few of its words taken out of context. (*Cal-State Business Products & Services, Inc. v. Ricoh* (1993) 12 Cal.App.4th 1666, 1676.) There was no abuse of the trial court's wide discretion to assign appropriate weight to the relevant factors.

45

## V.  CONCLUSION

The trial court applied the correct standards in conducting the proceedings below. No strong presumption in favor of the NFL plaintiffs' choice of forum applied because plaintiffs are not California residents for purposes of a forum non conveniens analysis. The burden of proof on the defendant insurers, as the moving parties on the motion, did not include establishing California is a seriously inconvenient forum because such proof is not required to justify a stay of the California proceedings, as contrasted with a dismissal.  The trial court's decision to stay the proceedings after weighing and balancing the relevant factors was well within its allowable discretion.

## VI.  DISPOSITION

The trial court orders staying the proceedings below pending the outcome of the parallel New York actions are affirmed.  Costs on appeal are awarded to defendants.

CERTIFIED FOR PUBLICATION


O'NEILL, J.[*]


We concur:


TURNER, P.J.


KRIEGLER, J.

---

[*]     Judge of the Ventura County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.