Filed 2/7/22  Spencer v. Clary CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| GERRY SPENCE,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>JAMES R. CLARY, et al.,<br><br>Defendants and Respondents. | B312281<br><br>(Los Angeles County<br>Super. Ct. No. 20STCV42478) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Teresa A. Beaudet, Judge.  Affirmed.

Parris Law Firm, R. Rex Parris, Alexander R. Wheeler and Susan S. Baker for Plaintiff and Appellant.

Gordon & Rees, Kimberly D. Howatt and Allison Jones for Defendants and Respondents.

_____

Gerald "Gerry" Spence appeals from an order staying the present litigation pending resolution of a related matter previously filed in United States District Court in Wyoming. Spence's chief contention on appeal is the trial court abused its discretion by ordering a stay because the two lawsuits do not involve the same issues or parties. We affirm.

### *FACTUAL AND PROCEDURAL BACKGROUND*

Spence is a nationally recognized trial attorney. In 1994, he founded the Trial Lawyers College (TLC), a nonprofit corporation based in Wyoming. TLC's mission was to train lawyers to represent "the disadvantaged, the disempowered, the disenfranchised, and the damned." Spence allowed TLC to use his ranch in Wyoming, named Thunderhead Ranch, for training and other purposes for over 25 years.

Prior to TLC's use, Spence bred cattle on Thunderhead Ranch. He created a brand to identify the ranch and his livestock; the brand depicts a stylized cloud with a lightning bolt. On December 2, 1965, Spence registered the brand with the State of Wyoming. He has maintained that registration since.

In 2012, TLC received two federally registered trademarks: one numbered 4,197,908 for "TRIAL LAWYERS COLLEGE" in standard characters, without claim to any particular font, style, size, or color (the '908 mark) and one numbered 4,198,054 for the brand designed by Spence — the stylized cloud with a bolt of lightning (the '054 mark).

Years later, a dispute arose among the TLC board members, who split into two camps that fought for control of the organization and the trademarks. One group included Spence, Rex Parris, who is Spence's attorney in this case, and other former members of the TLC board – John Zelbst, Joseph H. Low,

Kent Spence, John Joyce and Daniel Ambrose. For convenience, we refer to them as the Spence group. The other group consisted of the defendants in the present action – John Sloan, Milton Grimes, James Clary, Dana Cole (collectively, the Grimes group) as well as other board members of TLC.[1] As a result of the rift, Spence ousted TLC from Thunderhead Ranch and created a separate nonprofit seeking to provide legal training similar to TLC.

## 1. *The Federal Action in Wyoming District Court*

On May 13, 2020, TLC sued the Spence group and an entity known as Gerry Spence's Trial Lawyers College at Thunderhead Ranch (GSTLC) in Wyoming District Court in a matter entitled *The Trial Lawyers College v. Gerry Spence's Trial Lawyers College at Thunderhead Ranch, et al.* (D. Wyo., No. 1:20-cv-00080-J) (the Wyoming federal action). The Wyoming federal action alleged claims for trademark infringement, unfair competition, false advertising, and various declaratory and statutory relief.

TLC alleged the Spence group, who were all former TLC board members, had sought to build a multi-million dollar library in honor of Spence on Thunderhead Ranch using TLC funds. When other members of the board voted against the proposal, Spence terminated the lease that had allowed TLC to operate on Thunderhead Ranch. The Spence group thereafter created

---

[1] For purposes of this factual recitation, we need not exhaustively list the board members who sided with each group. We will specifically name individuals where it is necessary for an accurate statement of facts. We also note that by naming the second group the Grimes group, we do not intend to attribute any special or leadership position to Grimes; we merely use it for convenience and because he is the respondent in this appeal.

3

GSTLC, a Wyoming nonprofit corporation.  The Spence group, who did not own the trademarks, incorporated both the '908 mark and the '054 mark in their marketing for GSTLC.  The group also advertised to TLC's confidential client list.

The District Court issued a temporary restraining order and preliminary injunction in connection with the Spence group's use of the '908 mark and '054 mark.  Among other things, the court enjoined the Spence group from using the '908 mark (i.e., Trial Lawyers College) or similar names such as "Trial Warriors College" in marketing their legal training services.  It further enjoined the Spence group from displaying signage at Thunderhead Ranch depicting the '054 mark because the mark had become associated with TLC.  The court allowed the Spence group to use Trial Lawyers College in the context of explaining the lawsuits and the disputes to the public.  It also allowed the Spence group the use of Thunderhead Ranch and the name "Gerry Spence's Trial Institute."

In a second amended complaint, TLC alleged the Spence group thereafter used confusing variations of the TLC trademarks to operate as "Trial Lawyers University" and "Gerry Spence's Trial Warriors College."

The Spence group (and the entity defendant) filed an answer denying the allegations.  Spence and Parris asserted counterclaims against TLC and third-party claims against the Grimes group as well as Maren Chaloupka and Anne Valentine.  Spence and Parris alleged the Grimes group (and Chaloupka and Valentine) falsely claimed they constituted the true board of directors of TLC when they were not.  Additional allegations claimed that the Grimes group misappropriated Spence's "Thunderhead Ranch cattle brand mark and his name, voice, or

4

likeness . . ." by registering the '054 mark for the benefit of TLC and using photographs and video of Spence to promote TLC. Spence and Parris alleged they sought to protect Spence's intellectual property and to determine the authority and control of TLC. Trial in the federal action was scheduled for August 9, 2021. The Spence group successfully moved for a continuance on the ground it conflicted with a new legal training program scheduled to be held on Thunderhead Ranch.

## 2. *The Wyoming State Court Actions*

Certain members of the Spence group also filed three lawsuits in Wyoming state court. All three actions sought to determine control of TLC. By March 16, 2021, cross motions for summary judgment had been filed in the first and third Wyoming state court actions.[2] The parties stipulated to an indefinite stay of discovery in the Wyoming state actions pending resolution of the summary judgment motions.

## 3. *The California State Action*

On November 5, 2020, after the Wyoming federal action had been filed and was still pending, Spence alone brought the present lawsuit against the Grimes group in Los Angeles Superior Court. Spence asserted causes of action for fraud, conversion, breach of fiduciary duty, negligent misrepresentation, intentional infliction of emotional distress, and elder financial abuse based on their misappropriation of the '054 mark and Spence's other intellectual property, including photographs and videos of Spence.

---

[2] The second Wyoming state court action was voluntarily dismissed. The appellate record does not disclose the status of the other two Wyoming state actions.

5

Spence alleged that Clary asked Spence on January 25, 2012, for authorization to trademark the TLC logo, which was comprised of the phrases "Trial Lawyers College," "Thunderhead Ranch," and "Dubois, Wyoming" along with the '054 mark on a black background. Although Spence authorized Clary to trademark the TLC logo (containing all of those components), he did not authorize a separate trademark of the Thunderhead Ranch brand (the '054 mark). Spence alleged he only allowed the '054 mark to be incorporated into the TLC logo, and he was not aware of the separate trademark for the '054 mark until June 2020. Spence viewed the '054 mark as his property, not TLC's.

Spence alleged the members of the Grimes group owed fiduciary duties to him in their capacities as his personal financial and legal advisors. These duties were distinct from their obligations as TLC board members. He also alleged they committed elder financial abuse by their conduct because he was over the age of 65 at the time Clary registered the '054 mark on behalf of TLC.

Although named as defendants in the California action, neither Clary, Sloan nor Cole is a California resident. They timely removed the California state action to the District Court for the Central District of California. After removal, the Grimes group filed various motions to dismiss or stay. On January 29, 2021, the district court found the case had been improperly removed because one defendant, Grimes, was a California resident, thereby depriving the federal court of complete diversity jurisdiction.[3] The court remanded the federal action to the Los

---

[3]    28 U.S.C. § 1441(b)(2) provides: "A civil action otherwise removable solely on the basis of the [diversity of citizenship]

6

Angeles Superior Court without ruling on any of the motions filed by the Grimes group.

On December 18, 2020, TLC and the third-party defendants, which included the Grimes group, filed a motion in Wyoming District Court for a preliminary injunction enjoining Spence from prosecuting the lawsuit now before us. No ruling on the motion is included in our record.

On February 19, 2021, Grimes alone moved to dismiss the California lawsuit or stay the proceedings pending resolution of the Wyoming federal action because the issues central to both actions were identical: "(1) the ownership and validity of the TLC Marks; and (2) TLC's alleged use of Gerry Spence's name and likeness." Grimes also argued the Wyoming District Court was a more appropriate forum because discovery was well underway and set to close on May 31, 2021. At the time of Grimes's motion in the present case, the parties in the federal action had produced approximately 30,000 pages of documents, engaged in multiple rounds of written discovery, taken depositions, and received third party discovery.

In contrast, discovery in the present case had just begun. Two weeks before the motion to stay was filed, Spence served on the Grimes group an initial set of discovery requests, including demand for production of documents, requests for admission, and form interrogatories. By the time Grimes's motion to stay was heard, the Grimes group had only produced minutes for TLC's

---

jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."

board meetings, documents that had previously been produced in the Wyoming federal action.

Before Grimes's motion was heard, Spence moved for trial preference due to his advanced age (he was 92 years old) and serious health concerns. The trial court granted the motion for preference prior to deciding the motion to dismiss/stay but did not set a trial date.

On April 16, 2021, the trial court granted Grimes's motion to stay. It did not dismiss the case. The court found the Wyoming District Court to be a suitable forum and that the parties and issues "substantially overlap." The court reasoned a stay was appropriate to prevent inconsistent judgments and duplicative discovery and litigation. The court further noted Spence failed to present any evidence that the Wyoming federal action could not be expedited due to his age and medical condition. The court observed that, contrary to his request for preference in California, Spence had asked for matters in the Wyoming federal action to be continued.

Spence appealed the trial court's order. (Code Civ. Proc., § 904.1, subd. (a)(3) [an appeal may be taken from an order "granting a motion to stay the action on the ground of inconvenient forum. . . ."].)[4]

## DISCUSSION

On appeal, Spence argues the trial court abused its discretion in issuing the stay. We conclude the trial court acted within that discretion because the parties and issues in the California and Wyoming lawsuits "substantially overlap."

---

[4] Of the Grimes group, only Milton Grimes appealed and filed a Respondent's Brief. The other members of the Grimes group are not parties to this appeal.

Simultaneous prosecution of both actions would be duplicative and risk inconsistent judgments.

### 1.      *Standard of Review*

"A case-by-case examination of the parties, their dispute and the relationship of each to the state of California is the heart of the required analysis" for forum non conveniens. (*National Football League v. Fireman's Fund Ins. Co.* (2013) 216 Cal.App.4th 902, 921 (*NFL*).) "It is the trial court's duty to weigh and interpret evidence and draw reasonable inferences therefrom." (*Id.* at p. 918.) We therefore review the trial court's order granting the motion to stay for an abuse of discretion. (*Stangvik v. Shiley Inc*. (1991) 54 Cal.3d 744, 751 (*Stangvik*).)

### 2.      *Governing Law on Forum Non Conveniens*

"Forum non conveniens is an equitable doctrine invoking the discretionary power of a court to decline to exercise the jurisdiction it has over a transitory cause of action when it believes that the action may be more appropriately and justly tried elsewhere." (*Stangvik, supra,* 54 Cal.3d at p. 751.) The doctrine of forum non conveniens is codified in Code of Civil Procedure section 410.30, subdivision (a), which provides, "When a court upon a motion of a party . . . finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just."

"It is black letter law that, when a federal action has been filed covering the same subject matter as is involved in a California action, the California court has the discretion but not the obligation to stay the state court action." (*Caiafa Prof. Law Corp. v. State Farm Fire & Cas. Co.* (1993) 15 Cal.App.4th 800, 804; *Thomson v. Continental Ins. Co.* (1967) 66 Cal.2d 738, 747.)

9

This rule applies whether the federal lawsuit is filed in a California federal court or the federal court of another state. (*Berg v. Mtc Electronics Techs. Co.* (1998) 61 Cal.App.4th 349, 362 [California state action stayed in favor of related actions filed in federal court in the Eastern District of New York] (*Berg*).)

When, as here, a court stays an action on ground of forum non conveniens, it " 'retains jurisdiction over the parties and the cause; . . . it can compel the foreign [party] to cooperate in bringing about a fair and speedy hearing in the foreign forum; it can resume proceedings if the foreign action is unreasonably delayed or fails to reach a resolution on the merits. . . . In short, the staying court can protect . . . the interests of the California resident pending the final decision of the foreign court.' " (*Archibald v. Cinerama Hotels* (1976) 15 Cal.3d 853, 857, quoting *Ferreira v. Ferreira* (1973) 9 Cal.3d 824, 838.) The moving defendant bears the burden of proof on a motion to stay or dismiss on grounds of an inconvenient forum. (*Stangvik*, *supra*, 54 Cal.3d at p. 751.)

Our Supreme Court has stated that, in considering whether to grant a motion based on forum non conveniens, a trial court must take into account: (1) the suitability of the distant court and (2) public and private factors that weigh in favor of the home or distant court. (*Stangvik*, *supra*, 54 Cal.3d at p. 751.)

The trial court must first determine whether the alternative forum is a " 'suitable' place for trial." (*Stangvik, supra*, 54 Cal.3d at p. 751.) If it is, the next step is to consider the private and public interests involved to determine whether the balance lies in favor of retaining the action in California or requiring prosecution in the distant forum. (*Ibid.*) "The private interest factors are those that make trial and the enforceability of

10

the ensuing judgment expeditious and relatively inexpensive" while the public interest factors include "weighing the competing interests of California and the alternate jurisdiction in the litigation." (*Ibid.*)

Courts have found a host of factors relevant to a forum non conveniens determination that fall within the public and private format identified in *Stangvik.* (See *NFL, supra,* 216 Cal.App.4th at p. 917.).) In cases where a party requests a stay of the state action in favor of a previously filed federal action, the court "should consider the importance of discouraging multiple litigation designed solely to harass an adverse party, and of avoiding unseemly conflicts with the courts of other jurisdictions. It should also consider whether the rights of the parties can best be determined by the court of the other jurisdiction because of the nature of the subject matter, the availability of witnesses, or the stage to which the proceedings in the other court have already advanced." (*Farmland Irrigation Co. v. Dopplmaier* (1957) 48 Cal.2d 208, 215 (*Farmland*); accord *Benitez v. Williams* (2013) 219 Cal.App.4th 270, 276.) Where the plaintiff is a California resident, there is a "strong presumption" in favor of the plaintiff's choice of forum. (*NFL, supra,* 216 Cal.App.4th at pp. 926–928; *Stangvik, supra,* 54 Cal.3d at p. 754.)

### 3. *The Trial Court Did Not Abuse Its Discretion In Staying the California Action*

On appeal, Spence does not address whether the Wyoming District Court is a suitable alternative forum. Nor does he address the public factors identified in *Stangvik.* His challenge to the court's order rests primarily on a consideration of factors which other forum non conveniens cases have considered and which can be said relate to the private interests of the litigants.

11

He asserts the parties, subject matter, and claims in the Wyoming federal action and the California state action are different, and therefore there is no risk of inconsistent judgments. He also argues, as a California resident, the trial court should have applied a "strong presumption" in favor of his choice of a California forum. His advanced age is another factor weighing against a stay. Finally, Spence contends the Wyoming District Court is not the better forum to resolve the parties' dispute because the California action was filed before his counterclaim in the Wyoming federal action, none of the parties reside in Wyoming, and one defendant – Grimes – resides in California.

We follow *Stangvick's* guidance and review the court's order by first determining whether the Wyoming District Court is a suitable alternative forum. We then consider the factors identified by the parties.

### A. Wyoming District Court Is a Suitable Alternative Forum

A forum is suitable "if there is jurisdiction and no statute of limitations bar to hearing the case on the merits." (*Chong v. Superior Court* (1997) 58 Cal.App.4th 1032, 1037.) "[T]he question of a suitable alternative forum depends not on the factors relevant to the convenience of the parties and the interests of the public, but on whether an action may be commenced in the alternative jurisdiction and a valid judgment obtained there against the defendant." (*Stangvik, supra*, 54 Cal.3d at p. 752, fn. 3; see also *Am. Cemwood Corp. v. Am. Home Assurance Co.* (2001) 87 Cal.App.4th 431, 435.)

Spence does not address whether the Wyoming district court is a suitable alternative forum. He does not argue, for

12

example, that the statute of limitations bars his claims in Wyoming or that the Wyoming District Court lacks personal or subject matter jurisdiction over the parties and their disputes.[5] Presumably, this is because the record shows Spence and Parris have commenced litigation against the Grimes group in Wyoming District Court by their third-party claims and may obtain judgment on those claims against the Grimes group.[6] For these reasons, Wyoming District Court is a suitable alternative forum.

## B. The Factors Weigh in Favor of a Stay

We now turn to whether the factors weigh in favor of a stay. We conclude the trial court acted within its discretion. (*Farmland, supra,* 48 Cal.2d at p. 215; *Simmons v. Superior Court of Los Angeles County* (1950) 96 Cal.App.2d 119.)

Given the variety of factors courts have identified, we only address those which the parties argue are relevant to the present case. We begin with Spence's primary contention: the lack of

---

[5] In his opening brief, Spence points to the Grimes group's motion to dismiss the third party claims against them in the Wyoming federal action on the ground the court lacks personal jurisdiction over them. The Grimes group asserted none of them reside in Wyoming and their status as board members of TLC does not subject them to personal jurisdiction in that state. If, by this, Spence intends to show Wyoming is not a suitable alternative forum, the showing is insufficient. Spence has provided no evidence the Wyoming District Court granted the motion. Instead, the record indicates the Grimes group remain parties in the Wyoming federal action; their depositions were noticed, without subpoena, for April and May 2021, five months after their motion to dismiss was filed.

[6] As we have observed, Spence also brought suit against the Grimes group (and others) in Wyoming state court.

13

similarity between the issues and the parties does not risk inconsistent judgments. Under this view, both actions may proceed simultaneously.

### i. *The Same Parties and Issues*

We agree with the trial court that the parties and issues are substantially the same. In the present case, Spence is the sole plaintiff, and the defendants are Clary, Sloan, Cole, and Grimes. In the federal action, Spence is a defendant, and he and Parris brought Clary, Sloan, Cole, and Grimes into the case by way of third-party claims. It is undisputed the stay will not deprive any party in the California action, including Spence, from having an opportunity to be heard.

Spence complains the parties in the two actions are not identical because the federal action includes parties who are not in the California action – TLC, Parris, Maren Chaloupka and Anne Valentine. That is true but immaterial to our analysis. There is no requirement the parties in both cases be identical for a stay to be granted. (*Caiafa, supra,* 15 Cal.App.4th at p. 807 fn. 5.) Indeed, courts have affirmed stay orders in cases where the out-of-state action involved a significantly greater number of parties than the in-state action. (See *Century Indem. Co. v. Bank of Am.* (1997) 58 Cal.App.4th 408, 413; *Berg, supra,* 61 Cal.App.4th at pp. 354–355.)

We also reject Spence's argument that the Wyoming federal and California actions do not involve the same facts or issues. Both actions implicate the rightful ownership and use of the '054 mark and Spence's purported intellectual property, including his likeness, name, and voice. In the federal action, TLC alleged it was the rightful owner of the '054 mark and alleged the Spence group improperly used it (along with the '908 mark) to market

14

their new legal training program. Spence then filed counterclaims against TLC and third party claims, alleging TLC and the Grimes group misappropriated Spence's "marks, name, voice, and likeness for their personal benefit . . . ."

In the California action, Spence similarly alleges the '054 mark "was his personal property" and the Grimes group misrepresented what they intended to do with the mark and misappropriated it. Spence also alleges the Grimes group "have in their possession and refused to return Gerry Spence's intellectual property. This taking includes a lifetime of photographs, paintings, and videos of Gerry Spence at the ranch, at regional seminars, and myriad events in the last 25 years." Misappropriation of trademark and name and likeness are at the core of both the California and Wyoming federal actions.

Spence acknowledges his complaint in the California action "includes many of the same underlying factual allegations as the counterclaim he filed in the Wyoming [federal action] . . . ." But, he attempts to cast the California lawsuit as "purely about the 2012 misrepresentations Respondent J. R. Clary and others made to Spence, an elderly person within the meaning of California law, and Spence's reliance on those representations to his detriment." The federal action, by contrast, revolves around TLC's corporate governance and trademark infringement.

Spence's own allegations, quoted above, belie his characterization of the two lawsuits. Indeed, Spence acknowledged in the California complaint that the 2012 conversation that misled him to believe only the TLC logo would be trademarked was "memorialized in the Board minutes for the Trial Lawyers College on January 25, 2012." Also, the facts alleged in the California complaint describe the creation of TLC,

15

the creation of the Thunderhead Ranch "brand" (i.e., the '054 mark), the registration of the '054 and '908 marks, and that the Grimes group "used their position with TLC to wrongly retain the brand and logo."

### ii. Duplicative Litigation

Without a halt to the present action, "overlapping" litigation would be pending in California and in the federal court in Wyoming. That set of affairs is ripe for "unseemly conflicts" or inconsistent judgments. (*Farmland, supra,* 48 Cal.2d at p. 215.) Because of the advanced stage of the proceedings in the Wyoming District Court, the rights of the parties will most expeditiously be determined by that court.

At the time of the motion to stay, no trial date had been set in California. The federal action was close to trial, ensuring the parties an early resolution to their dispute. The posture of the Wyoming litigation serves Spence, who has sought and continues to argue he is entitled to trial preference due to his age and medical condition.

Allowing both matters to proceed simultaneously would almost certainly result in duplicative discovery and trial court proceedings. At the time Grimes moved to stay the present action, the parties in the federal action had produced approximately 30,000 pages of documents, engaged in multiple rounds of written discovery, taken depositions, and received third party discovery. Much or all of the federal discovery would likely be duplicated in California. Some of the documents produced in this action have already been produced in the federal action. The individuals to be deposed would also overlap; depositions of the Grimes group in the federal action were already scheduled for April and May of 2021. The record does not disclose the status of

16

those depositions. At bottom, the extensive Wyoming discovery was near completion when Grimes filed his motion to stay. That discovery obviates Spence's argument that California is a preferred forum to accommodate parties and witnesses and to access evidence.

Resolving Spence's third party claims in the federal action go a long way to adjudicating the California action, or even disposing of it altogether. Simultaneous prosecution of the two lawsuits would be duplicative and would risk inconsistent judgments.

*iii.* *The California Resident's Choice of Forum*

Spence also contends there is a "strong presumption" in favor of his choice of forum because he lives in California. He correctly states the law (*NFL, supra,* 216 Cal.App.4th at pp. 926–927, 932), but his argument is missing the key factual component – the trial court expressly found that Spence failed to proffer evidence of his residence or domicile. The predicate for the "strong presumption" is nowhere to be found.

Grimes, in his respondent's brief, points out that in the present complaint Spence does not allege he is a resident of California and, in fact, is silent regarding his residency or domicile. In his answer to the operative federal complaint, Spence denied TLC's allegation that he was a California resident. Grimes asserts that Spence is a resident of Wyoming but owns a second home in California.

Spence does not address the issue of residency in his reply brief, much less explain his denial of California residency in the federal action. Spence instead relies on a declaration filed by attorney Parris in support of Spence's motion for trial preference. In the declaration, Parris states, "based on information and

17

belief," Spence is unable to "leave his home in Santa Barbara because he is unable to walk without the use of two canes and has a dangerously unstable gate (sic)."

The trial court reasonably found that Spence had not demonstrated his residency was in California and was not entitled to the statutory presumption.

### iv.    *Trial Preference*

Spence next contends his advanced age and the trial preference given to him should override any other forum non conveniens factors because it is likely he will not live long enough to recover his intellectual property, personal property, and damages if he is made to await the outcome of the federal action. As the record reveals, the Wyoming litigation is much closer to resolution than is the California action. Trial had been scheduled for August 9, 2021 but the Spence group successfully moved for a continuance. (The record does not disclose its current status.) No trial has been scheduled in the California action.

If Spence were to succeed in Wyoming he would likely receive all or substantially all the relief he could achieve in California, and faster.

To the extent that Spence argues that the trial court's order granting preference requires the denial of a stay, Spence has not provided relevant authority for that point, and we reject it.

### v.    *Remaining Factors*

Spence argues his third-party claim against the Grimes group in the Wyoming federal action was filed two weeks *after* the California action was filed. Thus, from his perspective the California action was filed first. This myopia does not change the fact that the Wyoming federal action was filed by TLC before Spence brought his lawsuit in California.

We also reject Spence's argument that Wyoming is a disfavored forum because none of the parties reside there. According to Spence, Grimes's status as a resident of California weighs against the stay while Clary, Sloan, and Cole's out-of-state residency is a neutral factor. A defendant's residency is relevant to a forum non conveniens analysis (*Stangvik, supra,* 54 Cal.3d at p. 755). But it is not dispositive – all of the parties have substantial connection with the state of Wyoming, where the ranch and college were located.

### *DISPOSITION*

The trial court's order staying this action pending the outcome of the Wyoming federal action is affirmed. Grimes shall recover his costs on appeal.

RUBIN, P. J.

WE CONCUR:

BAKER, J.

MOOR, J.

19