Filed 9/9/22  Zeng v. Jiang CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ANPING ZENG,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>FENG JIANG,<br><br>    Defendant and Appellant. | B305886<br><br>(Los Angeles County<br>Super. Ct. No. BC583483) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Stuart M. Rice, Judge.  Affirmed in part; reversed in part and remanded with directions.

Anglin Flewelling & Rasmussen, Robert A. Bailey and Yaw-Jiun (Gene) Wu for Defendant and Appellant.

Law Offices of Barry G. Florence and Barry G. Florence for Plaintiff and Respondent.

Plaintiff and respondent Anping Zeng sued her former husband, defendant and appellant Feng Jiang, claiming that their divorce agreement allocated to her an investment they had made during their marriage. Jiang responded to the lawsuit by moving to dismiss it based on forum non conveniens, arguing that he and Zeng were Chinese nationals residing in China. The trial court denied that motion, and the matter proceeded to a bench trial, after which the trial court found for Zeng. Jiang contends on appeal that the trial court erred by denying his forum non conveniens motion, the trial court erroneously admitted at trial an exhibit concerning mediation, there was insufficient evidence he breached the divorce agreement, and awards of prejudgment interest and attorney fees should be reversed. We agree that the prejudgment interest award must be reversed and remanded for further proceedings but reject Jiang's remaining contentions.

## BACKGROUND

### I.   The complaint

Zeng and Jiang were married in China and divorced there in 2011. During their marriage, Zeng and Jiang invested $500,000 in the Los Angeles Film Regional Center (LAFRC) to secure United States green cards.

After their divorce, Zeng and Jiang disputed who was entitled to return of the LAFRC investment. So, in May 2015, Zeng filed a complaint in Los Angeles County Superior Court for declaratory relief, naming LAFRC and Jiang as defendants. The complaint alleged that Zeng and Jiang had entered into a divorce agreement in China providing that the $500,000 and stock rights in LAFRC belonged to Zeng. Because LAFRC was poised to disburse the funds to Jiang, Zeng asked for declaratory relief.

2

In response to the complaint, LAFRC interpleaded the funds, and the trial court entered an order dismissing LAFRC from the case in November 2016.

Jiang still had not been served with the complaint as of July 2015. In response to an order to show cause regarding service, Zeng explained that Jiang resided in China, so it was necessary to serve him through the Hague Convention process, and she thought he was evading service.

Nonetheless, Jiang was finally served on August 31, 2016 at an address in San Marino, California. He demurred to the complaint, but Zeng filed a first amended complaint (FAC), thereby mooting the demurrer. The FAC realleged the declaratory relief cause of action and alleged a new cause of action for breach of contract, i.e., a divorce agreement dated September 7, 2011. Jiang answered the FAC in December 2016. Although he raised various affirmative defenses, he did not raise any issue based on forum non conveniens.

II. Jiang's motion to dismiss based on forum non conveniens

A month after answering the FAC, Jiang moved in January 2017 to dismiss the action on the grounds of forum non conveniens. Jiang argued that he and Zeng resided in and were citizens of China and that the divorce agreement was entered into in China and governed by its laws. He admitted having owned a home in California but denied having a current interest in it, living there, or residing in California. He also asserted that Zeng had filed an action in China seeking the same relief, but that action had been dismissed for failure to pay court fees. Jiang agreed to be subject to jurisdiction in China and to waive any statute of limitations. Jiang asserted that the divorce

3

agreement allocating the LAFRC funds to Zeng was a "complete fabrication."

Zeng opposed the motion. She first argued that Jiang had waived any right to raise forum non conveniens because he had not raised it concurrently with his demurrer. Second, on the merits, Zeng asserted that she was a California resident and that Jiang was living at a home he owned in Los Angeles County when he was served. Further, the purpose of the LAFRC investment was to enable the parties to immigrate to the United States.

The trial court denied Jiang's motion.[1] The trial court first noted that while a defendant who has generally appeared in an action can thereafter raise forum non conveniens, a defendant's dilatory conduct in raising the issue may result in prejudice sufficient to deny the motion. Given the case's procedural posture, the trial court found sufficient prejudice to warrant a finding that the motion was untimely. The trial court therefore pointed to the interpleaded funds, which it said could not be disbursed until a final adjudication on the merits. Because the funds had been deposited into court and LAFRC had been dismissed, the trial court found that plaintiff could not seek relief in another jurisdiction. Were the case to be dismissed, the parties would potentially lose their interests in the property, which could escheat to the state.

Notwithstanding its untimeliness finding, the trial court addressed the motion's merits. It first found that although China was generally considered a suitable forum and that Jiang had agreed to waive any limitations period, China was not a suitable

---

[1] Judge Deirdre Hill heard the motion to dismiss. The hearing was not reported.

4

forum because of the interpleaded funds. Also, the trial court found it was uncertain whether a Chinese judgment could be enforced in California. Further, the private and public interests favored trying the case in California: the disputed funds were in California, Zeng and her son were California residents, Jiang was served in California, and he signed verifications under penalty of perjury in California. Finally, the trial court noted that the purpose of the investment money was to get visas to enable the parties and their son to live in California. Weighing these interests, the trial court concluded that the case should remain in California.

III.    The trial

The matter proceeded to a bench trial where the issue was which of two divorce agreements purporting to govern the LAFRC investment was genuine. Zeng claimed that a divorce agreement dated September 7, 2011 (the Zeng agreement) stating that the funds belonged to her was genuine. Jiang claimed that his signature on the Zeng agreement was forged and that a November 28, 2011 agreement (the Jiang agreement) stating that the funds belonged to him was genuine.

Only the parties and their competing forensic handwriting experts testified. Zeng testified that on September 7, 2011, she and Jiang were in a Shanghai courtroom, where they signed the Zeng agreement and a mediation agreement/transcript. She denied signing the Jiang agreement.

Zeng's expert, M. Patricia Fisher, a board certified forensic document examiner, had 40 years of experience that included a seminar in Chinese writing. Fisher testified that she had reviewed the Zeng agreement and a mediation transcript, both dated September 7, 2011 and both bearing what Zeng claimed

5

were Jiang's signature. She also reviewed handwriting exemplars, i.e., documents bearing Jiang's signature. In the expert's opinion, Jiang signed the Zeng agreement. Fisher further opined that Zeng did not sign the Jiang agreement.

Jiang's expert, James Black, testified to the contrary, that Jiang's signature on the Zeng agreement was fabricated. In reaching that opinion, Black reviewed live exemplars of Jiang's handwriting, meaning handwriting samples that Jiang prepared while meeting with Black. Jiang also testified that he did not sign the Zeng agreement. Rather, he and Zeng signed the Jiang agreement.

IV.    The statement of decision

In a statement of decision, the trial court found that the Zeng agreement was genuine and so it governed the LAFRC investment. The trial court explained that it had found Zeng's expert, who, for example, had training in Chinese writing, more persuasive. Further, Zeng's expert did not rely on live handwriting exemplars, meaning ones provided with knowledge that they were going to be used at trial, whereas Jiang's expert had relied on Jiang's live handwriting exemplars in forming his opinion that his client's signature on the Zeng agreement was forged.

The trial court also found Zeng more credible and that the circumstances under which the Zeng agreement had been signed did not support an inference Jiang's signature on it was forged. Further, the Zeng agreement itself, when compared to the Jiang agreement, showed that it was genuine because it used formal language, was more thorough in its division of assets, and did not disparage either party. In contrast, the Jiang agreement opened with, " 'As a result of the wife's extramarital affairs, the

6

marriage, through court mediation, has come to an end.' "  The trial court found that such "tone and language does not have the imprimatur of a valid, legal agreement.  The document immediately disparages the plaintiff and refers to a mediation that [Jiang] does not acknowledge attending or, at the very least, an alternate mediation date [Jiang] has not provided testimony to support.  It is also unlikely that [Zeng] would sign an agreement acknowledging extra-marital affairs."

The trial court concluded that the Zeng agreement was genuine and enforceable, the interpleaded funds would be released to Zeng, and Zeng was entitled to prejudgment interest at a rate of 10 percent per annum under Civil Code section 3289.  The trial court entered judgment to that effect, awarding Zeng the interpleaded funds, $245,075.11 in prejudgment interest, and $205,077.75 in attorney fees.

## DISCUSSION

I.    Forum non conveniens

Jiang contends that the trial court erroneously denied his motion to dismiss the action based on forum non conveniens.  We disagree.

Forum non conveniens is an equitable doctrine invoking a court's discretionary power to decline to exercise jurisdiction over a cause of action when the action may be more appropriately and justly tried elsewhere.  (*Stangvik v. Shiley, Inc.* (1991) 54 Cal.3d 744, 751.)  The moving-party defendant bears the burden of proof on a motion to dismiss based on the doctrine.  (*Ibid.*)  Whether to grant a forum non conveniens motion requires a trial court to engage in a two-step analysis.  (*Ibid.*)  First, the trial court determines whether the alternate forum is a suitable place for

7

trial.  A forum is generally suitable "if there is jurisdiction and no statute of limitations bar to hearing the case on the merits." (*Chong v. Superior Court* (1997) 58 Cal.App.4th 1032, 1037.) That the law is less favorable to the plaintiff in the alternative forum, or that recovery would be more difficult if not impossible, is irrelevant to whether the forum is suitable unless "the alternative forum provides no remedy at all," such as where there is no independent judiciary or due process of law.  (*Stangvik*, at p. 764.)

If the forum is suitable, the second step requires the trial court to consider the litigants' private interests and the public's interests in retaining the action for trial in California.  "The private interest factors are those that make trial and the enforceability of the ensuing judgment expeditious and relatively inexpensive, such as the ease of access to sources of proof, the cost of obtaining attendance of witnesses, and the availability of compulsory process for attendance of unwilling witnesses.  The public interest factors include avoidance of overburdening local courts with congested calendars, protecting the interests of potential jurors so that they are not called upon to decide cases in which the local community has little concern, and weighing the competing interests of California and the alternate jurisdiction in the litigation."  (*Stangvik v. Shiley, Inc.*, *supra*, 54 Cal.3d at p. 751.)

The first determination of whether there is a suitable alternative forum is a nondiscretionary legal question subject to de novo review.  (*American Cemwood Corp. v. American Home Assurance Co.* (2001) 87 Cal.App.4th 431, 436.)  The second inquiry, however, involves discretionary weighing of private and public factors and is reviewed for abuse of discretion,  affording

substantial deference to the trial court's balancing of factors. (*Ibid*.)

Beginning with the first inquiry, the trial court found that while China generally is a suitable alternative forum (see, e.g., *Guimei v. General Electric Co.* (2009) 172 Cal.App.4th 689, 699), it was not suitable in this case. China was an unsuitable forum here because the res of the lawsuit—the $500,000—was already in the California court's possession, and the enforceability of a Chinese judgment in California courts was uncertain. To this, Jiang responds that the trial court could have stayed rather than dismissed the case.[2] Even so, the fact remains that Jiang failed to establish that a Chinese court would have jurisdiction over the interpleaded funds.

Even if the trial court incorrectly concluded that China was not a suitable forum, it nonetheless engaged in the second-prong forum-non-conveniens analysis and found that the balance of factors favored trial in California. That conclusion was well-within the bounds of reason based on substantial evidence. First, the subject of the parties' dispute was an investment in a Los Angeles company and the investment itself was in Los Angeles County. Because the trial court already had jurisdiction over the res of the lawsuit and had already committed time and resources to the litigation, this made trial and the enforceability of the ensuing judgment potentially more expeditious and relatively inexpensive in California.

Second, plaintiff Zeng and her son were California residents. As such, her choice of forum should not be disturbed

_____

[2] According to the minute order of the unreported hearing on the motion to dismiss, Jiang asked for a stay at the hearing, although he had asked only for dismissal in his motion.

9

unless the balance of factors strongly favors the defendant. (See generally *National Football League v. Fireman's Fund Ins. Co.* (2013) 216 Cal.App.4th 902, 917.) There is evidence that Jiang also resided in California, although he denied it. (See, e.g., *ibid.* [defendant's residence is relevant factor].) Jiang had been served with the complaint at a property in San Marino, California to which he had held title, and Jiang signed verifications under penalty of perjury while at that property in December 2016. The trial court properly exercised its discretion to find that this constituted evidence Jiang resided in California, which also weighed in favor of a California forum.[3]

Third, the trial court noted that the parties invested $500,000 in LAFRC to get United States green cards to live here. The investment thus evidenced the parties' intent to reside in California. More to the point, having availed himself of an immigration program allowing him to be a member of the local community, Jiang's protest that the local community has no

---

[3] Jiang argues that Zeng is judicially estopped from asserting that he resided in California because of statements Zeng's counsel made in a July 2016 declaration about why Jiang had not been timely served with the complaint. Judicial estoppel prohibits a party from asserting a position contrary to one successfully asserted in the same or an earlier proceeding. (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 183.) Counsel declared that he had been trying to serve Jiang for a year, but Jiang was moving around to avoid service. He said that Jiang resided in China but also lived in Connecticut, and that counsel had just obtained a new address for Jiang. In so declaring, counsel did not take an inconsistent position but rather was asserting facts he believed to be true. Also, it is possible that Jiang had resided in China and also in California.

interest in a dispute concerning residents and a local investment is unpersuasive.

Jiang nonetheless counters that the trial court improperly elevated one factor (the $500,000 interpleaded into court) and ignored others (that any divorce agreement was entered into in China). While the public and private factors must be applied flexibly without giving undue emphasis to one factor (*Stangvik v. Shiley, Inc., supra*, 54 Cal.3d at p. 753), any emphasis the trial court placed on the interpleaded funds was not undue. That factor was relevant to both prongs of the analysis, and the trial court did not consider it to the exclusion of the others. Rather, as we have detailed, the trial court considered and balanced all relevant factors, including the parties' residency.

But Jiang nonetheless maintains that China had a greater interest in adjudicating this dispute because the contract was entered into there and governed by its laws. He cites *In re Marriage of Taschen* (2005) 134 Cal.App.4th 681 (*Taschen*). In that case, Angelika petitioned in Los Angeles County to dissolve her marriage to Benedikt, both German citizens. Benedikt also was the president of a German company where Angelika was employed, they owned homes in Los Angeles, and they lived part-time in Germany and part-time in Los Angeles. Based on evidence that necessary witnesses and documents were in Germany, some documents were in German, and the parties were German nationals and domiciliaries, *Taschen* found that the trial court did not exceed the bounds of reason in concluding Germany was the more appropriate forum. (*Id.* at p. 691.)

*Taschen* is distinguishable. That the trial court's finding in that case was not an abuse of discretion does not mean it was legally compelled. Also, unlike the parties in *Taschen*, Zeng was

11

a California resident and there was evidence Jiang also resided in California. *Taschen* also did not involve property located in California, as is the case here. And although Jiang argues that China has an interest in enforcing contracts entered into there and under its laws, we do not agree with how Jiang frames the issue. The issue in this case does not concern broader issues about the parties and their divorce agreement and how they divided their assets. It concerns the narrow issue of the parties' singular investment in the United States for the purpose of obtaining green cards, i.e., residence in the United States. It is therefore not clear that China would have an interest in a dispute concerning a foreign investment made by nationals residing outside of China. At a minimum, it cannot be said that China's interest in the dispute necessarily is greater than California's interest in it. Given this, we cannot find that the trial court exceeded the bounds of reason in concluding that the factors favored California as a forum.

Jiang finally suggests that the trial court erred by finding his motion untimely because he filed it after demurring to the original complaint and answering the FAC. Any error on this score is irrelevant because the trial court considered the motion on its merits. In any event, the trial court did not err. Jiang incorrectly argues that the trial court ignored authority holding that a defendant who has "generally appeared may make a forum non conveniens motion at any time, not only on or before the last day to plead." (*Britton v. Dallas Airmotive, Inc.* (2007) 153 Cal.App.4th 127, 133; *Global Financial Distributors Inc. v. Superior Court* (2019) 35 Cal.App.5th 179, 188.) To the contrary, the trial court acknowledged that authority but also noted that in some cases a defendant's dilatory conduct in raising forum non

conveniens may be so prejudicial that it warrants denying the motion.

It found that such was the case here. Here, Jiang did not raise forum non conveniens in his demurrer to the original complaint or answer to the FAC. Instead, he has admitted on appeal that he strategically waited to file his motion to dismiss until *after* LAFRC had been dismissed from the case in November 2016 because its status as a California resident would have created a presumption that California was a convenient forum. This admission undercuts his suggestion that he did not know of or could not have addressed the interpleader action sooner.

As to that, while Jiang was not served with the complaint until August 2016—which was more than a year after the complaint was filed, several months after LAFRC's interpleader motion had been granted but several months before LAFRC was dismissed in November 2016—there is evidence that Jiang was aware of the lawsuit and the interpleader motion. Zeng said she had been trying to serve him and thought he was evading service, and her counsel had emailed Jiang about accepting service, but he refused. Also, Jiang was served by email in January 2016 with Zeng's limited opposition to LAFRC's motion for an order of discharge and dismissal, an amended notice of ruling on the motion for interpleader in February 2016, and a stipulation to modify the order of discharge in April 2016. Therefore, Jiang knew well before being served with the complaint about the litigation. While Jiang perhaps could not have challenged the interpleader motion until he was served with the complaint, there was evidence to support the trial court's finding that Jiang was dilatory in raising forum non conveniens.

13

II.    Admissibility of the mediation transcript

At the bench trial, the trial court admitted exhibit 10, an "indictment of divorce and mediation transcript" signed in Shanghai, China on September 7, 2011.  Jiang now argues that the trial court's reliance on the "substance" of the mediation transcript requires reversal, because that document was inadmissible.  We disagree.

Our disagreement first lies with Jiang's assertion that the trial court considered the "substance" of the mediation transcript.  Substantively, the mediation transcript restates basic facts about the parties (e.g., date of birth and addresses), Zeng's explanation as to why she wanted a divorce, who was present at the mediation (the parties, a judge, a clerk, and mediators), and contains a brief colloquy between the parties and a mediator about alimony, child custody, and that the parties had resolved community property, housing, and credit and debt issues.  None of this was pertinent to the trial court's decision.

Instead, the mediation transcript was relevant because it bears what purports to be Zeng's and Jiang's signatures on September 7, 2011, the same day the Zeng agreement was signed.  As the trial court therefore said, the mediation transcript was relevant because it contained an exemplar of the parties' signatures and, as such, was reviewed by Zeng's expert to evaluate the genuineness of the signatures on the Zeng and Jiang agreements.

In its statement of decision, the trial court confirmed it had considered only the circumstances surrounding the mediation transcript but not its substance.  The trial court said that the "abundance of detail about the circumstances upon which the Zeng Agreement was signed, and the mediation transcript

14

placing both parties in the same official location on the day it was signed," supported its conclusion that Zeng was more credible. The trial court therefore did not rely on the substance of the mediation transcript—e.g., why Zeng wanted a divorce and that the parties had agreed to resolve property and custody issues.

Our second problem with Jiang's focus on the mediation transcript is he ignores all the other evidence the trial court relied on to support its judgment, in violation of the principle that no judgment shall be set aside unless the error complained of resulted in a miscarriage of justice. (Cal. Const. art. VI, § 13; *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800; *Zhou v. Unisource Worldwide* (2007) 157 Cal.App.4th 1471, 1480.) Whether a miscarriage of justice occurred requires an examination of the entire cause. (*Cassim*, at p. 800.) Jiang undertakes no such examination. Although his failure to do so constitutes a forfeiture of the issue, our examination shows that the trial court's judgment did not hinge on the mediation transcript. The trial court was quite clear that it did not find Jiang and his expert credible. It gave less deference to Jiang's forensic expert because his resume did not reflect relevant experience, qualifications, and training with Chinese characters, in contrast to Zeng's forensic expert who had qualifications and familiarity with Chinese characters. Jiang's expert's methodology was also suspect because he relied on live exemplars of Jiang's handwriting that Jiang prepared for the litigation, again in contrast to Zeng's expert who did not rely on live exemplars. The trial court also said that Zeng and Jiang's credibility was "key" to its decision and cited several instances in which it found Zeng's explanation for certain events credible. Finally, the trial court indicated that the Jiang agreement was

15

not credible on its face, finding it "unlikely" that Zeng would have signed an agreement that disparaged her by referring to her extramarital affairs as the cause of the divorce.

Given our rejection of Jiang's premise that the trial court relied on the "substance" of the mediation transcript and our conclusion that, in any event, no miscarriage of justice occurred, Jiang's arguments about why the mediation transcript was inadmissible are of no moment. Even so, we address them in brief.

Jiang first argues that the mediation transcript should have been excluded because it was not disclosed on Zeng's exhibit list before trial. However, although the pretrial colloquy about the exhibits is somewhat ambiguous, Jiang's counsel did not ask that the mediation transcript be excluded; he asked for a continuance. In response, Zeng's counsel explained that the document was a handwriting exemplar her expert, Fisher, had relied on, and therefore it was on the pretrial exhibit list under the label of "exemplars" of Fisher. Counsel further explained that because there had been no exchange of experts, it would not have been disclosed during any expert disclosure process. (See generally Code Civ. Proc., § 2034.210 [detailing simultaneous exchange of expert witness information].) Given these representations, the trial court was well within its discretion to find the exhibit admissible and to deny a continuance, especially given that the matter was on the eve of trial.[4] (See generally

_____

[4] We also note that Jiang had multiple opportunities to object to the mediation transcript, including at the close of trial when the trial court told the parties to provide a tabbed and indexed exhibit binder with a stipulation as to what was admissible. The trial court said that if they disagreed on any

*Professional Engineers in California Government v. Brown* (2014) 229 Cal.App.4th 861, 875 [trial court has broad discretion in ruling on admissibility of evidence]; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 566 [trial court's exercise of discretion in ruling on continuance request will not be disturbed on appeal unless there has been a miscarriage of justice]; Cal. Rules of Court, rule 3.1332(c) & (d) [trial continuances are disfavored, and proximity to trial is a factor to consider].)

Second, Jiang argues that the mediation transcript was inadmissible hearsay. However, as we have indicated, the trial court did not consider the document for a hearsay purpose. Instead, Zeng called Jiang as a witness in her case in chief and asked if his signature appeared on the mediation transcript. The trial court overruled Jiang's objections that the document lacked foundation, violated the California Rules of Court, and had not been translated into English. The trial court repeated that the transcript was not coming in for its substance. Jiang then denied that the signature on the document was his. Thereafter, the trial court did not use the mediation transcript for "substantive purposes." Instead, the trial court inquired as to the circumstances surrounding the signing of the mediation transcript; for example, why the mediation transcript was signed by witnesses while the Zeng agreement was signed by only Zeng and Jiang.

As for Jiang's third contention, that the document was inadmissible under the mediation privilege in Evidence Code section 1119, subdivision (a), he admittedly never raised the privilege below. His failure to do so forfeits the claim on appeal.

exhibit, the parties were to bring it to the trial court's attention so that it could rule on any objection. Jiang did not do so.

(See generally *K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.* (2009) 171 Cal.App.4th 939, 949–950; *People v. Hayes* (1990) 52 Cal.3d 577, 618–619.)

## III. Enforceability of the Zeng agreement

As we understand it, Jiang's next contention is the trial court should have declined to hear the action because the Zeng agreement was part of a divorce decree, and, as such, the "family court" had "exclusive jurisdiction" over any matter relating to that decree. Stated otherwise, the matter had to be heard in China.

To the extent this is a rehash of the forum non conveniens argument, we have already rejected it.

To the extent Jiang is arguing that only China could hear or enforce this matter, he did not make any such cogent argument or motion on that ground below, other than the motion based on forum non conveniens. And on appeal, he merely cites authority that when a family court acquires jurisdiction to divide community property in a dissolution action, no other department of the superior court may make an order adversely affecting that division. (See, e.g., *McMillin v. Eare* (2021) 70 Cal.App.5th 893, 919.) That authority has no application here, as it does not concern a foreign judgment.

As for Jiang's arguments that the Zeng agreement was unenforceable because it was inequitable, he was not represented by counsel when he signed it, and a condition precedent to enforcement had not occurred, these issues were not raised below, and we accordingly decline to address them. (*K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.*, *supra*, 171 Cal.App.4th at p. 949.)

18

Further, assuming Chinese law, and not California law, governed any issue, it was Jiang's appellate burden to demonstrate how Chinese law would require reversal of the judgment, which we presume is correct regardless of its reasoning. (See generally *Sommer v. Gabor* (1995) 40 Cal.App.4th 1455, 1470 [no prejudicial error absent showing foreign law required different result].) Jiang made no attempt to do so.

IV.     Sufficiency of the evidence to show breach of contract

Jiang concedes there was sufficient evidence of the existence of a contract (the Zeng agreement) but disputes that there was sufficient evidence he breached it. He thus points out that although the FAC alleged he had breached the Zeng agreement by not agreeing to a transfer of the LAFRC investment when it matured, no evidence was admitted to establish his refusal. We are unpersuaded.

It is true that Jiang at trial was never asked, "Do you refuse to have the LAFRC investment released to Zeng?" And it might have behooved Zeng to have the court take judicial notice of LAFRC's motion to interplead the $500,000 and to introduce conflicting demand letters from Zeng and Jiang to LAFRC, each claiming a right to the monies. These omissions do not, however, amount to the "gotcha" moments Jiang thinks they do.

Rather, the declaration of LAFRC's counsel was admitted into evidence, and in that declaration he said that Jiang had sent demand letters to LAFRC in September and October 2015 for return of the funds to him. Even in the absence of the declaration, that Jiang was refusing to honor the Zeng agreement was beyond doubt. This dispute was about which of two competing agreements was genuine: the Zeng agreement stating

19

the investment belonged to her, or the Jiang agreement stating the investment belonged to him. Jiang's denial that he signed the Zeng agreement, his expert's testimony that it was not Jiang's signature on the Zeng agreement, and Jiang's position that the investment belonged to him under the Jiang agreement are, to say the least, evidence of his refusal to acknowledge that the funds belonged to Zeng, i.e., a breach of the Zeng agreement. Stated simply, that Jiang was refusing to comply with the Zeng agreement was overwhelmingly clear.

V.     Prejudgment interest

Jiang contends that the award of prejudgment interest must be reversed. As we now explain, we agree.

After the parties rested, they submitted closing briefs. In hers, Zeng asked for prejudgment interest in the amount of $237,814.64 ($136.99 per day beginning on the day the complaint was filed). The trial court then issued a proposed statement of decision on March 16, 2020, which the clerk mailed that day. The proposed statement of decision awarded prejudgment interest of $237,814.64, calculated based on the 10 percent per annum interest rate in Civil Code section 3289.

Jiang filed objections to the proposed statement of decision on April 6, 2020, and one objection was to prejudgment interest. He pointed out that the Zeng agreement contained this interest provision: "In case of the failure to pay the compensation amount in time, in addition to paying the interest four times of the interest of the bank, the defaulting Party shall also assume the legal cost, attorney fee and the travel expense of the lawsuit therefrom." Jiang further argued that Zeng had failed to produce evidence of the meaning of this provision, when the investment matured, and the date of breach.

20

On April 20, 2020, the trial court adopted its proposed statement of decision, and in its judgment stated that the "time to file objections pursuant to California Rules of Court, Rule 3.1590 having expired, the court adopts its tentative decision." By this, it is unclear whether the trial court considered the objections or found them untimely. If the latter, the trial court was incorrect. A party has 15 days from the time a proposed written statement of decision is served to file objections. (Cal. Rules of Court, rule 3.1590(g).) Service by mail extends by five days the time to file a response. (Code Civ. Proc., § 1013, subd. (a); *Staten v. Heale* (1997) 57 Cal.App.4th 1084, 1088–1089.) The proposed statement of decision was served by mail on March 16, 2020, so any objections had to be filed within 20 days, with the twentieth day being April 5, 2020, a Sunday. Therefore, Jiang had to file objections on or by April 6, 2020, which is what he did. His objections were therefore timely.

Jiang's timely objection that the interest rate in Civil Code section 3289 did not apply might be well-taken. That section states that if a contract entered into after 1986 does not stipulate a legal rate of interest, the obligation shall bear a 10 percent per annum interest rate after a breach. (Civ. Code, § 3289, subd. (b).) Thus, where parties enter into a contract containing a legal rate of interest, they are bound by that contract, as prejudgment interest at the statutory rate is available only in the absence of a contractual provision. (*Cavalry SPV I, LLC v. Watkins* (2019) 36 Cal.App.5th 1070, 1093.) Here, the Zeng agreement did stipulate an interest rate of "four times of the interest of the bank." But the trial court found that the "contract contains no interest rate specified in the event of a breach."

21

Because it appears that the trial court might not have considered the interest rate in the Zeng agreement and Jiang's objections to prejudgment interest, the prejudgment interest award must be reversed and the matter remanded so that the trial court can consider the objections to prejudgment interest and conduct further proceedings on this limited issue in its discretion. We express no opinion on the meaning of the interest provision, its applicability, and its enforceability.

## VI. Attorney fees

Jiang's only complaint about the award of attorney fees to Zeng is the trial court inappropriately let Zeng submit a supplemental brief, which, in Jiang's view, constituted a new and untimely motion for attorney fees. We disagree.

A motion for attorney fees must be filed within the time for filing a notice of appeal, which is usually 60 days after service of notice of entry. (Cal. Rules of Court, rules 3.1702(b), 8.104.) A trial court may extend the time to file a motion for attorney fees for good cause. (*Id.,* rule 3.1702(d).) California Rules of Court, rule 3.1702(d), is to be liberally construed. (*Robinson v. U-Haul Co. of California* (2016) 4 Cal.App.5th 304, 326.)

Here, Zeng timely filed her motion for attorney fees, supported by her counsel's declaration. Counsel discussed the work involved in the case but did not state the number of hours he worked on it or a billing rate. Instead, he said he had represented Zeng on a contingency basis at a rate of 40 percent of the judgment. Jiang opposed the motion on the ground that Zeng's counsel had failed to meet the burden of proof, because counsel did not state his rate and hours worked, which were necessary to calculate the lodestar. The trial court heard the motion and found that although counsel's declaration provided

some relevant information about the fees incurred, it was inadequate because it did not state counsel's hourly rate and the hours worked on the case. Therefore, the trial court ordered Zeng to submit supplemental briefing, allowed Jiang to respond, and continued the hearing. Zeng filed her supplemental brief setting forth her counsel's billing rate, the hours he worked on the case, and supporting exhibits. Jiang filed his supplemental opposition, arguing that Zeng's supplemental brief amounted to a brand new motion for attorney fees and, as such, was untimely.

In its ruling granting Zeng her attorney fees, the trial court distinguished authority Jiang had cited for the proposition that the supplemental brief constituted a new fee motion and found it had the discretion to order that briefing.

We agree with the trial court that it did not violate the time restrictions in California Rules of Court, rule 3.1702(b), by ordering the supplemental briefing. First, the trial court had authority to extend the time to file a fee motion, and it clearly found good cause for that briefing and to continue the hearing. (See Cal. Rules of Court, rule 3.1702(d).)

Second, the authority Jiang relied on, *Alan S. v. Superior Court* (2009) 172 Cal.App.4th 238, is, as the trial court found, distinguishable. In that case, the prevailing party filed a cost memorandum. The losing party, Mary, filed limited objections. Thereafter, Mary, without leave of court, filed supplemental objections that stated "wholly distinct and independent" grounds. (*Id.* at p. 261.) The court found that the supplemental objections were untimely and that considering them would subvert the time the California Rules of Court permitted to file a motion to strike or tax costs. (*Ibid.*)

23

*Alan S.* is not on point.  It involved costs, not attorney fees. Also, Mary had no leave of court to file supplemental objections, whereas the trial court here *ordered* Zeng to file the supplemental brief.  And while that supplemental briefing contained additional information, namely, counsel's hourly rate and hours worked on the case, it was not a wholly new motion. Rather, Zeng had already established in her original papers that she was the prevailing party (a matter not subject to much dispute), that her attorney represented her on a contingency basis, and the amount of attorney fees sought, $298,030.  In her supplemental brief, Zeng asked for attorney fees in the reduced amount of $241,680, and detailed the work, hours, and counsel's hourly rates.  We therefore disagree that the supplemental briefing was a wholly new motion and that Jiang was prejudiced by the supplemental briefing.

## DISPOSITION

The award of prejudgment interest is reversed, and the matter is remanded for further proceedings for the trial court to reconsider that interest award. The judgment is otherwise affirmed. The parties are to bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

EGERTON, J.

ADAMS, J.*

---

* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

25